## Ley v. Jersey Shore Area Softball Association

*Marc F. Lovecchio,* for plaintiff, Jersey Shore Borough.

*Daniel Morgan,* and *Robert A. Seiferth,* for Jersey Shore Town Meeting Inc.

*Joel M. Kormanski,* for Jersey Shore Area Softball Association.

RAUP, *P.J.,* January 7, 1991—Before this court are motions for summary judgment filed by the defendants in an action brought by Stafford Ley and Diane Ley, his wife, as plaintiffs, against the Jersey Shore Area Softball Association (hereafter J.S.S.A.), the Jersey Shore Town Meeting Inc. (hereafter J.S.T.M.), and the Jersey Shore Borough.

The plaintiff, Mr. Ley, alleges physical injuries and a loss of earning capacity directly resulting from being struck on the back of the head by a foul ball on July 5, 1988, while a patron of a carnival operated by the defendant, J.S.T.M. He further claims that such injuries were caused by the negligence of the named defendants, i.e., their failure to warn of a dangerous condition and activity, their failure to warn and make safe against a known harm associated with such activities, and their failure to prevent the scheduling of a softball game in conjunction with and in proximity to a carnival, created an unreasonable risk of harm and violated the duty of care owed to the plaintiff and other licensees participating in such activities.

The plaintiff-wife, Diane Ley, alleges a derivative cause of action in the nature of loss of the society, comfort, companionship and consortium of her husband.

## MOTIONS FOR SUMMARY JUDGMENT

The defendant J.S.T.M., as a lessee and possessor of public grounds on which Mr. Ley's injury was said to have occurred, moves that the claims against it should be dismissed through summary judgment, under immunities granted by Pennsylvania's Recreational Use of Land and Water Act. This Act provides limited tort liability to owners or occupiers of lands made available to the public for recreational use, unless (a) a fee is charged to those who enter onto the land by the licenser, or (b) a "willful or malicious failure to guard or warn against a (known) dangerous condition, . . . or activity" exists. 68 P.S. §477-1 and 6(1) and (2).

The defendant J.S.S.A., as a lessee in possession of public grounds adjacent to the place of the alleged injury, claims no duty of care was owed under statutory provisions of the Recreational Use of Land and Water Act and also moves for summary judgment. The defendant softball association claims, in the alternative, it did not occupy or possess the adjacent property on which carnival activities were conducted, and therefore, that it was unable as a matter of law to restrict or control use of such adjoining lands occupied by co-defendant J.S.T.M. Thus, J.S.S.A. maintains it owed no duty to the plaintiff and that its activity could not be considered the proximate cause of any injury occurring to carnival attendees.

A motion for summary judgment filed by the defendant, Jersey Shore Borough, claims municipal

tort immunity under 42 Pa.C.S. §8541 because the harm was not caused by a natural defect in the land itself. It also claims . . . immunity under the Recreational Use of Land and Water Act as an owner not in possession, custody and control at the time of the injury. 68 P.S. §477-(3),(6). Cross claims were filed in July 1989, by Jersey Shore Borough against the co-defendants for purposes of indemnification. Jersey Shore Borough held leases for nominal consideration with both co-defendants at the time of the injury.

On March 26, 1990, the motion for summary judgment filed on behalf of Jersey Shore Borough and against the plaintiffs Leys, was granted by agreement of the parties. At the same hearing the plaintiff was given leave to amend his complaint to aver intentional misconduct by the remaining defendants.

## SCOPE OF REVIEW

A motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrogatories, admissions and affidavits indicate that there are no genuine issues as to any material facts, and that the moving party is entitled to judgment as a matter of law. *Quarry Office v. Philadelphia Electric Co.*, 394 Pa. Super. 426, 576 A.2d 358 (1990), Pa.R.C.P. 1035(b). Further, in passing upon a motion for summary judgment, the court must accept as true all well pled facts in the non-moving parties' pleadings and examine the record in the light most favorable to the non-moving party. *Pocono International Raceway Inc. v. Pocono Produce Inc.* 503 Pa. 80, 83, 468 A.2d 468, 470 (1983).

## UNCONTESTED FACTS

It is uncontested by the parties that a carnival and softball game were being held concurrently at a place known as the Jersey Shore Recreational Field on the evening of July 5, 1988. Nor is it in dispute that the carnival was an annual event normally in operation for a number of days in the early part of July of each year. This event has been held by J.S.T.M., a non-profit organization chartered by the state, for at least 12 years. The carnival apparently occupied five to six acres and involved stage entertainment, amusement rides, exhibitor booths and concessions. The land used by J.S.T.M. was held through individual leases with the Jersey Shore Borough and Jersey Shore School Board. These leases specified the areas to be used, means of access, rights of use and so forth.

Exhibitors and concessionaires were subleased space for their booths by J.S.T.M. Although these parties charged fees to the public for amusements and were also allowed to sell goods, J.S.T.M. itself charged no entry, parking or other type admission fees. Any profits from the carnival went toward other events with which J.S.T.M. is associated.

J.S.S.A. operates as a fastpitch softball league involving six area teams. They publish a league schedule in which games were played both at the Jersey Shore Recreational Field and at other locations. Although apparently no attempt was made by either of the defendants to coordinate the league schedule with activities of the carnival, testimony indicates that typically at least several games are played at the Jersey Shore Recreational Area during carnival activities each year. Again, no admission charge was assessed to members of the public attending softball games. However, the league did operate a refreshment stand and there is some

indication a voluntary collection or raffle may have been conducted during games to defer the cost of equipment, etc.

It is not in dispute that on July 5, 1988, at or about 9:30 p.m., a softball game in which J.S.S.A. was involved was in progress adjacent to, and operating coincidental with, carnival activities being held at that time. Nor is it contested that a foul ball was hit over a fenced bleacher area and into a grassy strip separating the baseball field from carnival activities. The plaintiff alleges he was struck by this ball while standing with his family in front of a "ninja" game booth, operated by a sub-lessee of J.S.T.M.

The record is clear that the proximity of the softball field to the carnival grounds implied a risk that errant foul balls might hit carnival patrons. Several parties associated with either the softball association or the carnival gave depositions that foul balls occasionally traveled in the area where the plaintiff was hit, although the record would require an inference that such an event was quite uncommon.

In dispute at the present time is the exact location of the "ninja" stand, both in terms of distance from the home plate of the baseball field, and also from the right field foul line. There is substantiated testimony by both J.S.T.M. and J.S.S.A. that an open grassy area separated the ball park fence and the carnival booths. Estimates of the width of this strip vary from 65 to 75 feet. Also, there remains disputed testimony as to the distance of the "ninja" stands in question from home plate. This distance has been variously described as approximately 230 feet from where the batter would stand and in line with the right field fences, to a distance of approximately half that amount; the difference is not material to our determination here.

## DISCUSSION

### Motion For Summary Judgment By J.S.T.M.

The issue presented by this motion is whether, assuming the facts would otherwise present an issue for the trier of fact as to liability for negligence on the part of J.S.T.M., Pennsylvania's Recreational Use of Land and Water Act presents as a matter of law a defense in behalf of that defendant for negligent conduct. If carnival activities are protected under the Act from claims based on negligence, the defendant would owe no duty of care to attendees unless the defendant's misconduct could be considered to be a "willful or malicious" failure to warn against dangerous "conditions . . . or activities." 68 P.S. §477-6.

The plaintiff first argues that the carnival's recreational purpose does not fit into the nature of activities intended for protection by the Act. Under §477-2(3), recreational purpose "includes, but is not limited to . . . hunting, fishing, swimming, boating, camping. . . ." However, the listing is not exclusive as to types of "recreational use" protected. Its stated purpose is to encourage owners of real property "to make land and water available for public use, by limiting their liability toward persons entering thereon for such purposes." §477-1. The uses specified by statute are "merely illustrative by the sections's own terms." *Walsh v. City of Philadelphia,* 126 Pa. Commw. 27, 558 A.2d 192 (1989). The "owner" of lands protected need not be a private person. *Commonwealth, DER v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986). *Farley et al. v. Township of Upper Darby et al.,* 100 Pa. Commw. 535, 514 A.2d 1023 (1986).

The plaintiff next argues that because concessionaires receive money during the carnival, part of

which is indirectly paid to J.S.T.M. by their lease contract, the carnival is a profit making activity and thus pre-empted from the Act by its exclusion of organizations which "charge the persons who go onto the land for recreational use thereof." 68 P.S. §477-6(2).

However, we consider the reasoning applied in *Kniaz v. Benton Borough,* 112 Pa. Commw. 416, 535 A.2d 308, (1988) to be determinative. This case held that fees paid in a bingo game held by volunteer firemen, outdoors, at a municipal park, did not constitute a "charge" as intended by the Act. The defendant J.S.T.M. is a non-profit corporation, chartered by the state since 1965. No admission or parking charges were assessed for entrance to carnival activities. Also, the carnival was held outdoors and was open to all who wished to attend. The fact that part of the recreational use involved voluntary expenditures for rides, food, entertainment or games does not, by itself, constitute an admission fee or entry charge. Section 477-2(4).

For the reasons stated above, we hold that the provisions of the Recreational Use of Land and Water Act statute are applicable and that J.S.T.M. is immunized with respect to a cause of action sounding in negligence brought by a patron of its carnival.

In Counts I and III of its amended complaint, the plaintiff also alleges that both the J.S.S.A. and J.S.T.M. (a) knew that operation of a softball game and carnival at the same time, and in proximity with one another, created an unreasonable risk of harm, and that both J.S.S.A. and J.S.T.M. knew (or should have known) of such harm, and that such harm was unlikely to be discovered by persons attending these events. The plaintiff further alleges that defendants' conduct, by failure to warn or make

safe or coordinate the respective schedules and/or relocate their activities, constitutes a "deliberate, intentional and knowing" breach of their obligation to the plaintiffs' safety.

By this allegation the plaintiffs seek to avoid the effect of the Recreational Use of Land and Water Act. However, one cannot create a cause of action which is the nature of reckless or intentional conduct by simply applying those labels to the conduct in question. The pleadings and depositions make it clear what the conduct of J.S.T.M. was of which the plaintiffs complain. As a matter of law that conduct does not rise to a level which would create a justiciable issue of reckless or intentional or willful or malicious conduct.

We conclude, therefore, that the plaintiffs' cause of action against J.S.T.M. is immunized by the provisions of the Recreational Use of Land and Water Act statute.

## MOTION FOR SUMMARY JUDGMENT BY JERSEY SHORE SOFTBALL ASSOCIATION

J.S.S.A. also seeks summary judgment based on an alleged immunity under the Recreational Use of Land and Water Act statute. For the reasons stated in the foregoing discussion, we would hold preliminarily that the activity being conducted by the Jersey Shore Fastpitch League was a recreational use within the meaning of the Act and that this defendant made no charge for any admission fee.

A more difficult issue presented with respect to this motion, vis-a-vis that of J.S.T.M. relates to the fact that the injury was not suffered on the land being used by J.S.S.A.

The Act has been held to apply to an injury to a spectator occurring off the actual grounds of a

baseball game. In *Lowman et al. v. Indiana Area School District,* 96 Pa. Commw. 389, 507 A.2d 1270 (1986), the Act was held to apply with respect to the claim of a child spectator who was struck by a ball which had been overthrown by a fielder in the direction of first base during a high school baseball game. The injured party was seated on land outside the ballfield but adjacent thereto and in an area which had been designated for spectators. The court found that under section 2 of the Act "land" included such areas as bleachers which were adjacent to a baseball diamond.

The uncontested facts of this case are distinguishable from those presented in *Lowman.* The purposes of the Act clearly apply to *Lowman.* There, the possessor of the baseball field invited spectators to use the adjacent bleacher area for a recreational purpose and without charge. Here, however, the injured party was not, at the time of the injury, using the baseball field or adjacent areas for a recreational purpose which related to the baseball activity.

The defendant J.S.S.A. apparently contends that the plaintiff had been a spectator in bleachers at the ballfield earlier. That, however, is irrelevant with respect to the applicability of the Act in this case. When the injury occurred, the plaintiff clearly was not using a spectator area to watch the baseball game.

The Recreational Use of Land and Water Act specifically provides:

"Nothing in this Act shall be construed to:

"Relieve any person using the land of another for recreational purposes from any obligations which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon or from the legal consequences of failure to employ such care." 68 P.S. §4477-7(2).

We hold, therefore, that J.S.S.A. is not entitled to summary judgment with respect to the provisions of the Recreational Use of Land and Water Act.

J.S.S.A. also seeks summary judgment on the basis that it neither owed a duty of care, nor did it breach any such duty as a matter of law, given the pleadings and depositions before us. Clearly, there is an issue for the trier of fact with regard to the negligence of J.S.S.A. and that argument will likewise be denied.

Finally, J.S.S.A. seeks summary judgment based on the doctrine of assumption of risk. That argument is summarily denied given the location of the plaintiff and his activities at the time the injury was allegedly sustained.

## ORDER

And now, January 7, 1991, for the reasons set forth in the foregoing discussion, the motion of defendant Jersey Shore Town Meeting Inc. for summary judgment is granted and the action of the plaintiff against that defendant is dismissed. The motion for summary judgment of the Jersey Shore Softball Association (Jersey Shore Fastpitch League) is denied.