558 A.2d 192

**Thomas WALSH, Jr., Appellant,**

v.

**CITY OF PHILADELPHIA, Appellee.**

**CITY OF PHILADELPHIA, Appellant,**

v.

**Thomas WALSH, Jr., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1988.

Decided May 12, 1989.

Edward F. Chacker, Daniel J. Siegel, Gay & Chacker, Philadelphia, for appellant/appellee, Thomas Walsh, Jr.

Donna Mouzayck, Barbara R. Axelrod, Deputy City Solicitors, Norma S. Weaver, Seymour Kurland, City Sol., Philadelphia, for appellee/appellant, City of Philadelphia.

Before CRUMLISH, Jr., President Judge, L. McGINLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Thomas Walsh (Walsh) and the City of Philadelphia (City) have cross-appealed[1] from an order of the Court of Common Pleas of Philadelphia County which determined that: 1) the City was not immune from liability for damages for personal injuries Walsh suffered on a City playground by virtue of the so-called Recreational Use of Land and Water Act (Recreation Act or Act)[2] and 2) that Walsh was not entitled to damages for pain and suffering because he did not prove a permanent loss of a bodily function or that he was permanently disfigured. We reverse.

The parties submitted a stipulation of facts to the trial judge, who based his ruling thereon, allowing oral argu-

---

1. Walsh's appeal is docketed at 2945 C.D.1987; the City's is at 210 C.D.1988.

2. Act of February 2, 1966, P.L. (1965) 1860, *as amended,* 68 P.S. §§ 477-1—477-8.

ment by counsel. The facts indicate that Walsh, eighteen years of age, fell at the Guerin Recreation Center playground on January 21, 1983, while playing a "chase" game of basketball, sustaining an ankle fracture. He was in various casts for over five months and then underwent three months of physical therapy. He lost nine months of work due to the accident. Medical and lost wage damages were stipulated to be $5,800. Pain and suffering damages, if allowed, were stipulated to be $45,000.

The Guerin Recreation Center, owned by the City, is a cement recreational facility, located between Sixteenth, Jackson and Wolf Streets. It is approximately a half city block long and one block wide. It contains two full and two half basketball courts, as well as bocce courts and benches. The hole Walsh fell into was between the basketball and bocce courts.

Walsh's last medical treatment for his injured leg was August 4, 1983 and no further treatment is indicated. Following removal of the casts, he was found to have a permanent one-half inch atrophy of the left quadriceps and calf muscles.

■ The threshold issue we must address is whether the City is immune from liability. As a precondition to imposing liability upon a local agency, a plaintiff must demonstrate that the damages sought would have been recoverable if the injury were caused by a person not having available a defense of immunity. 42 Pa.C.S. § 8542(a)(1). The City contends that it would have such a defense under Section 3 of the Recreation Act, 68 P.S. § 477–3, which provides in part: "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."

An "owner" is defined in Section 2 of the Recreation Act, 68 P.S. § 477–2 as: "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premis-

es." It is clear that the "owner" of recreational land need not be a private person. *See Commonwealth v. Auresto*, 511 Pa. 73, 511 A.2d 815 (1986) (Commonwealth immune); *Farley v. Township of Upper Darby*, 100 Pa.Commonwealth Ct. 535, 514 A.2d 1023 (1986) (township immune).

The question here is whether the land and use fall within the purview of the statute. Section 2 of the Recreation Act defines "land" as "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty." "Recreational purpose" is defined in Section 2 as *"includ[ing], but ... not limited to, any of the following*, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic, or scientific sites." (Emphasis added.)

Walsh argues, relying on *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 507 A.2d 1 (1986), that an inner-city playground is not the type of land the Recreation Act is designed to protect. In *Rivera*, our Supreme Court determined that the immunity granted under the Recreation Act did not apply to an indoor swimming pool on the grounds of a theological seminary in an urban area. The pool was being used by a group of youngsters for an evening swim party. The evidence in *Rivera* indicated that, while the group had implicit permission to use the facility, and groups did frequently use the pool, free of charge, the seminary grounds were not otherwise open to the public. Further, the entrance to the building in which the pool was situate was locked and the group had to navigate a maze of hallways to reach the pool itself. On these facts, the Supreme Court declined to apply the immunity provisions of the Recreation Act.

The Court's opinion in *Rivera* contains a lengthy discussion of the Legislature's purpose in enacting the Recreation Act:

> The Recreation Use Act is therefore designed to encourage the opening up of large, private land holdings for

outdoor recreational use by the general public by limiting the liability of the landowner. Considering that purpose, we believe the Legislature intended to limit the meaning of the words 'buildings, structures and machinery or equipment when attached to the realty' in Section 2 of the Act, 68 P.S. § 477–2, to ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions. Grammatically, this construction is indicated by the dual presence of the conjunctive 'and' in the list, both before 'buildings' as well as after 'structures.' The position of the limiting clause 'when attached to the realty' at the end of the sentence is another such indication. All of these factors make it appropriate to treat the list beginning with the word 'buildings' as a restrictive modifier of 'land, roads, water, watercourses.'

The intention of the Legislature to limit the applicability of the Recreation Use Act to outdoor recreation on largely unimproved land is evident not only from the Act's stated purpose but also from the nature of the activities it listed as recreational purposes within the meaning of the statute. Specifically, with the exception of 'swimming,' which may be either an indoor or outdoor sport, the recreational activities enumerated in the statute are all pursued outdoors.

*Id.*, 510 Pa. at 15–16, 507 A.2d at 8 (footnote omitted).

Despite this relatively broad language, we believe that *Rivera* is factually distinguishable from the instant matter, and, accordingly, not dispositive. The Supreme Court considered significant the fact that the seminary grounds were not otherwise open to the public. It construed the phrase "buildings, structures and machinery or equipment when attached to the realty" in Section 2 of the Recreation Act to be limited to ancillary structures attached to open space lands, themselves open for recreational purposes. The enclosed seminary facility did not fall within the Court's construction of the Act's definition of "land." Secondly, the Court looked at the definition of "recreational purposes"

and determined that, with the exception of swimming, all of the activities listed in the Act's definition were pursued outdoors. The fact that the activity at issue in *Rivera* was pursued indoors, even though it was a recreational purpose specifically included in the Act's definition of that term, strengthened the Court's conclusion that the Act was not meant to apply.

Walsh further argues that this Court's decision in *McNeill v. City of Philadelphia*, 104 Pa.Commonwealth Ct. 494, 522 A.2d 174 (1987), is controlling. In that case, the minor plaintiff had been injured when he struck a wire on a tennis net while riding his bicycle on a playground and tennis courts owned by the City of Philadelphia. Because the case had been disposed of upon preliminary objections, we determined that we did not have enough factual information to determine whether the playground should be classified as largely unimproved land or whether it more closely resembled an enclosed recreational facility such as that in *Rivera*. Accordingly, we remanded the case for further proceedings.

In the case before us, the facts are stipulated. Although the trial court's opinion makes reference to this playground as an "enclosed area,"[3] it is apparent from the stipulation of facts that the recreational area at issue is a playground lot, not contained within a building as in *Rivera*. The area contains basketball and bocce courts and benches. The entire area is apparently paved, although there is a minimal amount of shrubbery.

■ These facts simply are not indicative of "an enclosed recreational area" analogous to the *Rivera* swimming pool housed in a locked building with no general public access to either the grounds surrounding the building or the building itself. As the Court noted in *Rivera*, such indoor recreational facilities "are relatively easy to supervise and monitor for safety hazards." *Id.*, 510 Pa. at 15, n. 17, 507 A.2d

---

**3.** The stipulation of facts contains no indication as to whether the playground lot was fenced in and we are unable to make that determination from the record before us.

at 8, n. 17. We conclude that an outdoor playground lot constitutes "land" within the meaning of the Recreation Act.

The next step in our analysis is to determine whether the activity at issue, a game of basketball, constitutes a "recreational purpose" within the definition of Section 2 of the Act. Walsh argues that all of the enumerated recreational purposes are "outdoorsy" activities and that "activities such as basketball, baseball, football, hockey, volleyball, soccer and other street games" are not included. (Walsh's brief at 210 C.D.1988, p. 4.)

As a starting point, we note that the uses specified in the statutory definition are merely illustrative by the section's own terms. This Court has had the opportunity to review several cases where the activities at issue did not fall within those specifically mentioned by the Act. In *Lowman v. Indiana Area School District*, 96 Pa.Commonwealth Ct. 389, 507 A.2d 1270 (1986), we held that baseball constituted a recreational purpose within the purview of the statutory definition.[4] Subsequently, in *Farley*, we affirmed a grant of summary judgment on the basis of a township's immunity under the Recreation Act where a child was injured in a fall from a sliding board in a park owned and maintained by the township. Finally, in *Kniaz v. Benton Borough*, 112 Pa.Commonwealth Ct. 416, 535 A.2d 308 (1988), the appellant, who was playing bingo while attending a volunteer fire company picnic in the borough's public park, was injured when the picnic table bench on which she was seated suddenly overturned. The appellant argued that bingo could not be considered a recreational purpose under the Act. We rejected that argument, reasoning that, although the bingo game was at least partly for fund-raising purposes, "the activity in general [the picnic in a public park],

---

4. In *Lowman,* the baseball field itself, with its appurtenant improvements such as the fences, bleachers and backstop, were held to fall within the Recreation Act's definition of "land." Although *Lowman* was decided before the Supreme Court's decision in *Rivera,* we do not believe that its reasoning conflicts with the above-quoted language of *Rivera.*

as well as [the appellant's] use in particular, were for 'recreational purposes.' " *Id.*, 112 Pa.Commonwealth Ct. at 418, 535 A.2d at 309.

As these three cases indicate, the list of recreational uses in Section 2 of the Act is not exhaustive. We have applied the term "recreational use" to other uses which, like basketball, 1) might be pursued either indoors or outdoors (picnic bingo game), 2) are not considered to be "outdoorsy" activities in that they are not confined to natural settings (use of a sliding board, baseball game) and 3) are sports activities (baseball). For these reasons, we believe that the Recreation Act applies to the facts of this case and that the trial court erred in failing to find the City immune from suit. Accordingly, we reverse the court's order awarding damages to Walsh for the injuries he suffered while playing basketball at the Guerin Recreational Center.[5]

### ORDER

AND NOW, this 12th day of May, 1989, the order of the Court of Common Pleas of Philadelphia County in docket number 2945 C.D.1987, finding that Appellant Walsh is entitled to damages, is reversed. The order of the Court of Common Pleas of Philadelphia County in docket number 210 C.D.1988, finding that Appellant City of Philadelphia is not entitled to immunity from suit, is reversed.

CRUMLISH, Jr., President Judge, concurring.

While I concur in the result reached by the majority, I write separately to articulate the dilemma which this Court faces when litigants refer us for guidance and authority to the *Rivera* and *Auresto* decisions.

In *Rivera*, the Supreme Court, with Chief Justice Nix and Justices McDermott and Zappala vigorously dissenting, stated that the Recreational Use Act was intended to encourage public access to land for outdoor recreational use.

---

5. In light of our conclusion that the City is entitled to immunity from suit, we need not address the issues raised by Walsh in his cross-appeal at 2945 C.D.1987.

The language quoted by our majority was unnecessary to the *Rivera* holding and fails to give the reader adequate guidance as to what is "largely unimproved land."

Moreover, while we are constrained to follow the authority of *Auresto* (as we did in applying it to Commonwealth political subdivisions in *Farley*), adherence to the *Auresto* decision in tandem with the *Rivera* dicta quoted above, leads to anomolous results. That is, a municipality may be liable for injuries occurring in enclosed recreational spaces but not for injuries occurring in parkland. That result is dictated by no greater a criterion than the size of the plot. To say that playground and recreational areas, of which there may be hundreds, are more easily supervised than municipally owned parkland defies reality.

Rather, the Commonwealth and its political subdivisions should not be judicially cloaked in immunity when the Recreational Use of Land and Water Act by its own terms does not grant it.

Consequently, I concur only in the result because of my disagreement with the reasoning in *Auresto* and the troublesome language of *Rivera*.

McGINLEY, J., joins in this concurring opinion.