585 A.2d 445

**Thomas WALSH, Jr., Appellant,**

v.

**CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued April 3, 1990.

Decided Jan. 9, 1991.

Reargument Denied Feb. 11, 1991.

228

Edward F. Chacker, Daniel J. Siegel, Philadelphia, for appellant.

Alexander A. DiSanti, Media, for amicus—Pa. Trial Lawyers Assoc.

Alan C. Ostrow, Philadelphia, for appellee.

Matthew L. Wolford, Philadelphia, for amicus—Com. of Pa.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

CAPPY, Justice.

The issue presented in this appeal is whether the Recreation Use of Land and Water Act, 68 P.S. § 477–1 et seq. (hereinafter "RUA"), should apply to bar a claim for injuries sustained as a result of the negligent maintenance of a paved inner-city playground and recreation center. For the reasons that follow, we hold that the RUA does not bar the claim of the plaintiff. In making this determination, we reverse the order of the Commonwealth Court.

## FACTS

The plaintiff, Thomas Walsh, Jr., was engaged in a game of "chase basketball" at the Guerin Recreational Center in the City of Philadelphia on the evening of January 21, 1983. During the course of the game, the plaintiff fractured his left ankle when he fell in a hole in the blacktopped surface between the basketball court and the boccie court. As a result of the injury, plaintiff was required to wear three separate casts on his leg for a period in excess of six months after the incident. The plaintiff continues to complain of discomfort in his left leg and suffers from noticeable atrophy of the left quadricep and calf. At all times relevant to the occurrence of this injury, the defendant, City of Philadelphia, was responsible for the custody, control and maintenance of the real property known as the Guerin Recreational Center, located at 16th and Jackson Streets, Philadelphia, Pennsylvania.

## PROCEDURAL HISTORY

The plaintiff filed a complaint for his damages alleging that the defendant was liable under the real property exception to the Political Subdivision Tort Claims Act, 42 Pa.C. S.A. § 8542(b)(3).[1]  Plaintiff sought damages for pain and

1. The statute provides in pertinent part:

   **§ 8542. Exceptions to governmental immunity**

suffering, claiming that he suffered a permanent loss of bodily function and permanent disfigurement, compensable under 42 Pa.C.S.A. § 8553(c)(2)(ii).[2] In its answer to the complaint, the defendant denied liability based on the Political Subdivision Tort Claims Act.[3] In the new matter, they asserted a complete immunity defense, relying on § 481 of the RUA. The defendant then moved for summary judgment on the basis of its immunity claim under the RUA. The trial court did not enter an order on the motion for summary judgment. All parties agree it was orally denied and the oral ruling is consistent with the opinion of the trial court.

The matter was presented to the trial court on stipulated facts. The trial court found that the defendant was not protected by the immunity provisions of the RUA, and that

(a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter....

(b) (3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

2. 42 Pa.C.S.A. § 8553 provides in pertinent part:

**Limitations on damages**

(c) **Types of losses recognized.**—Damages shall be recoverable only for:

(2) Pain and suffering in the following instances:

(i) death; or

(ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

3. The defendants claim that they are not liable under the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8542, was only raised in their Answer to the plaintiff's complaint. The issue was not argued at Summary Judgment, not raised at trial, not preserved in Post Trial Motions, nor presented to the Commonwealth Court; thus it is not an issue before this Court.

it was liable for the injuries of the plaintiff under the real property exception to the Political Subdivision Tort Claims Act.[4] The plaintiff's claim for pain and suffering was disallowed, but a verdict for the plaintiff in the amount of $5,800 was entered based upon the stipulated damages for medical expenses and plaintiff's lost wages.

Both parties filed motions for post trial relief which were denied. The defendant appealed to the Commonwealth Court on the issue of immunity under the RUA. The plaintiff filed a cross appeal on his claim for pain and suffering.

The Commonwealth Court reversed the decision of the trial court, in an Order and Opinion dated May 12, 1989, holding "the Recreation Act applies to the facts of this case and ... the trial court erred in failing to find the City immune from suit." *Walsh v. City of Philadelphia,* 126 Pa.Commw.Ct. 27, 558 A.2d 192 at 196 (1989). Based on its holding, the Court did not reach the merits of plaintiff's appeal as to the damages sought for pain and suffering.

In a concurring opinion, President Judge Crumlish wrote separately to articulate the alleged dilemma created by two prior decisions of this court involving immunity claims under the RUA; *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo,* 510 Pa. 1, 507 A.2d 1 (1986) and *Commonwealth of Pennsylvania Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986), which he believed to be irreconcilable. In order that we may clarify any seeming inconsistencies and further illuminate the scope of the RUA, we have granted this petition for appeal.

## THE RECREATION USE OF LAND AND WATER ACT

Our disposition of these claims must begin with a review of the Recreation Use of Land and Water Act. The RUA as

4. *See,* 42 Pa.C.S.A. § 8542(b)(3); as set forth in its entirety in footnote 1.

adopted by the Pennsylvania General Assembly was taken almost entirely from a Model Act presented to the states through the Council of State Governments annual publication, Suggested State Legislation.[5] The reason for the RUA as adopted in Pennsylvania is succinctly stated therein:

### § 477–1. Purpose; liability

The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

To encourage landowners to permit the general public access to their lands without charge, the RUA provides that the landowners be insulated from liability; with two specific exceptions:

### § 477–6. Liability not limited

Nothing in this act limits in any way liability which otherwise exists:

(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

This court has recently had two opportunities to consider the scope of immunity provided by the RUA. The first opportunity occurred in the case of *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1 (1986), where we held that the RUA did not bar a claim for damages arising out of the negligence of the defendant in the drowning death of a young boy in a privately owned, indoor swimming pool. The second opportunity came in the case

---

**5.** *See,* The Council of State Governments, *Public Recreation on Private Lands: Limitations on Liability,* XXIV Suggested State Legislation 150, 150 (1965).

of *Commonwealth of Pennsylvania Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986), where we held that the Commonwealth was entitled to immunity under the RUA for injuries caused to that plaintiff when his snowmobile struck a snow covered tree stump in a state park.

*Rivera* and *Auresto* thus dealt with two different issues under the RUA. The focus in *Rivera* was on the meaning of the word "land" in the RUA statute, while the focus in *Auresto* was on the distinction between private and public landowners. In the case now before us, we are asked to determine whether a municipality should be immune for injuries sustained by a youth using a public basketball court. Clearly, the instant case contains elements present in both *Rivera* and *Auresto,* but requires us to go one step further in the analysis of the RUA. In order that we may properly adjudicate the issues in the case at bar, we must first review the *Rivera* and *Auresto* cases.

## REVIEW OF THE PERTINENT CASE LAW

In *Rivera, supra,* this court found that the defendant was not entitled to protection from liability arising out of a claim for negligence concerning its operation of a *private indoor* swimming pool to which members of the public were admitted without charge. Although swimming was clearly a "recreational purpose," 68 P.S. § 477-2(3), and the public was permitted to use the facility "without charge," 68 P.S. § 477-2(4), we concluded that a reading of § 477-2 of the RUA in its entirety prohibited a finding that the operation of its *private indoor* swimming pool by the defendant was intended to fall within the scope of the Act.

The section at issue provides in its entirety:

§ **477-2. Definitions**

As used in this act:

(1) **"Land"** means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

(2) **"Owner"** means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) **"Recreational purpose"** includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) **"Charge"** means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

This Court determined that the definition section of the RUA in conjunction with its stated purpose as found in § 477–1 [6], indicated that the legislature intended to define the words found in § 477–2 in a manner consistent with the stated general purpose of the RUA.[7] From this analysis, the Court reasoned that the RUA was designed for the purpose of opening unimproved *land* for *outdoor* recreational use;

> The Recreation Use Act is therefore designed to encourage the opening up of large, private land holdings for outdoor recreational use by the general public by limiting the liability of the landowner. Considering that purpose, we believe the Legislature intended to limit the meaning of the words 'buildings, structures and machinery or equipment when attached to the realty' in Section 2 of the Act, 68 P.S. § 477–2, to ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions. 510 Pa. at 15, 507 A.2d at 8.

Accordingly, this court held that "neither the language nor the purposes of the Recreation Use Act require a

**6.** That purpose, as stated before is: "to encourage owners of *land* to make *land* and *water* areas available to the public for recreational purposes...."

**7.** This interpretation of the RUA is consistent with the rules governing the construction of statutes found in 1 Pa.C.S.A. § 1921.

construction which applies its immunity to the Seminary's [defendant] indoor pool." 510 Pa. at 17, 507 A.2d at 9.

The *Rivera* court's use of the word "private" when describing the land to which the RUA applied was not an essential part of the definition of land; it merely reflected the fact that the indoor swimming pool at issue happened to be owned by a private party. The court in *Rivera* determined that extending the immunity provisions of the RUA to owners of private indoor swimming pools would not serve public policy goals. *See, De Simone v. City of Philadelphia,* 380 Pa. 137, 110 A.2d 431 (1955).

In the case of *Auresto, supra,* we were called upon to interpret a section of the RUA which had not been at issue in the *Rivera* case. The plaintiff in *Auresto* was injured when the snowmobile he was operating hit a snow covered tree stump on Peck's Pond, located within the Delaware State Forest in Pike County, Pennsylvania. The issue was simply whether the Commonwealth of Pennsylvania was entitled to the protection of the immunity provisions under the RUA as an "owner" of land. As the RUA itself makes no distinction between *private* or *public* ownership of land in any section, the only logical conclusion was that the Legislature intended no distinction.

The *Auresto* Court read the RUA in conjunction with the Sovereign Immunity Act, 42 Pa.C.S.A. § 8522(a), and observed that the liability of the Commonwealth extended no further than the liability of a private party. Since a private party would be entitled to the immunity protection of the RUA on the facts of that case, the Commonwealth, also would be immune. 511 Pa. at 78, 511 A.2d at 817.

The decisions in *Rivera* and *Auresto* are not inconsistent. In *Rivera,* the indoor swimming pool at issue was owned by a private party and thus the Court had no reason to address the question of public or private ownership in that case. The *Rivera* case turned on the determination of the intent of the Legislature as to the meaning of the word "land", and the ancillary structures attached thereto. The decision in *Auresto,* however, turned on the right of the Common-

wealth as a landowner to equal protection under the RUA as that afforded a private citizen. In *Auresto* it was obvious that the ice covered pond within the Delaware State Park clearly fell within the definition of "land" intended to be protected by the RUA. The land at issue in *Auresto* was plainly unimproved land being used for outdoor recreational purposes as found by the *Rivera* court to be protected by the Act.

When the two cases are read in conjunction, the following principles emerge from the decisions in *Rivera* and *Auresto:* (1) that an owner of land includes private and public owners; and (2) that when an owner allows free and indiscriminate access to his unimproved land for recreational purposes, he is entitled to the protection of the RUA for injuries sustained by persons using his property.

## DISCUSSION

With these foregoing principles in mind, we now turn to the question of the liability of the City of Philadelphia for the injuries sustained by plaintiff Walsh during a basketball game on a paved inner city playground.

The Political Subdivision Tort Claims Act imposes liability upon the City of Philadelphia in the same circumstances as the Sovereign Immunity Act imposes liability upon the Commonwealth.[8] Thus, there is no doubt that the City of Philadelphia is entitled to the same protection as a private landowner in regard to its ownership of the Guerin Recreational Center. The City charges no fee for the use of the recreational center, allows access to the general public, and developed Guerin Recreational Center for outdoor recreational purposes. The presence of these factors, the defendant argues, places the Gurein Recreation Center within the scope of *land* as described by the RUA. We do not agree.

The physical layout of the Guerin Recreation Center was described by the Commonwealth Court as follows:

8. *Compare,* 42 Pa.C.S.A. § 8542(a) and 42 Pa.C.S.A. § 8522(a).

The Guerin Recreation Center, owned by the City, is a cement recreational facility, located between Sixteenth, Jackson and Wolf Streets. It is approximately a half city block long and one block wide. It contains two full and two half basketball courts, as well as boccie courts and benches. *Walsh v. City of Philadelphia, supra,* 558 A.2d at 193.

The Guerin Recreation Center is a completely improved recreational facility. To extend the provisions of the RUA to the center—a completely improved recreational facility—would be to ignore the purpose of the Act and to disregard the reasonable expectations of the users of such a facility. By assuming the responsibility of installing the improvements that exist at this facility, the City concomitantly assumed the responsibility for maintaining those improvements. *De Simone, supra.*

In *Rivera,* we stated that the RUA was intended to encourage landowners to allow free access to their property for outdoor recreational purposes. In *Auresto,* we determined that the Commonwealth as an owner of land was entitled to the same protection under the RUA as a private landowner. It would be illogical, however, to extend the RUA to provide blanket immunity to all government owned and operated recreational facilities. Such an extension of the RUA is inconsistent with present public policy trends away from blanket immunity for sovereign authorities. *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978).

When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the RUA was intended by the Legislature to circumvent this basic principle of tort law.

In light of these considerations, it would be totally unwarranted to deny plaintiff Walsh any recovery for those injuries which resulted from Philadelphia's negligent maintenance of the basketball and boccie courts involved in the case at bar. Accordingly, we hold that the City of Philadelphia is not entitled to claim immunity under the RUA simply because the Guerin Recreational Center, which it owns, is an outdoor recreational facility.

## PLAINTIFF'S CLAIM FOR PAIN AND SUFFERING

■ We now turn to the remaining issue of plaintiff's claim for pain and suffering. In reviewing this claim, we are mindful that the purpose behind the enactment of the Political Subdivision Tort Claims Act was to insulate Political Subdivisions from liability, except for injuries sustained to persons or property in accordance with one of the specific exceptions listed within the Act. *Mascaro v. Youth Study Center*, 514 Pa. 351 at 355, 523 A.2d 1118 at 1120 (1987). Thus, in construing the claim of the plaintiff under 42 Pa.C.S.A. § 8553(c), we must "narrowly interpret" the section to promote the mandate of the legislature in limiting governmental liability. *Accord Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988).

■ The plaintiff alleges both a "permanent loss of bodily function" and a "permanent disfigurement" in support of his claim for pain and suffering. The record reveals the following facts in support of these allegations.

Immediately preceding the injury, plaintiff worked as a shipper for H. Freeman & Son, and as a bar porter in the Sands Casino. At the time of the accident, plaintiff was taken to Methodist Hospital where he was examined, X-rayed and casted. Dr. Nappi, an orthopedist, was the treating physician. Plaintiff was placed in a long leg cast for three months, a short leg cast for five weeks, and another short leg cast for five weeks. He underwent physical therapy for approximately three months for his left knee and ankle. No further treatment is anticipated. As a

result of the accident, he did not work for approximately nine months.

According to the parties' stipulation of facts, if the plaintiff had testified, he would have stated that he feels as if something is missing at the fracture level, he still experiences achiness (sic) at the level of the fracture and has "charley horses" in the left calf. Further, he sometimes feels as if his left knee does not want to extend completely. Both parties' physicians agree that there is no objective findings to support plaintiff's complaints, as the knee does fully extend and has full range of motion. Both parties' physicians agree that there is a half-inch atrophy of the left quadricep and calf. Dr. Nappi, the original treating physician, would testify that the atrophy is permanent. The plaintiff has resumed employment in the same capacities as before the accident. Although plaintiff has chosen to no longer pursue athletics, none of the physicians who examined him recommended that he refrain from sports.

First, we shall address plaintiff's claim that he has suffered a "permanent loss of bodily function." This case presents the first opportunity for our Court to consider the meaning of this phrase. The Commonwealth Court addressed this issue in *City of Philadelphia v. Owens*, 115 Pa.Commw.Ct. 28, 539 A.2d 512 (1988), alloc. denied, 525 Pa. 638, 578 A.2d 932 (1990), as did the United States District Court for the Eastern District of Pennsylvania in *Savitt v. City of Philadelphia*, 557 F.Supp. 321 (E.D.Pa.1983).

In *Owens*, the plaintiff was unloading groceries from a cargo truck when he was struck by a garbage truck driven by a municipal employee of the City of Philadelphia. As a result of the accident Owens suffered a permanent loss of range of motion of 20% in his lower back, was in constant pain and was unable to participate in activities which he had previously enjoyed. The Commonwealth Court, affirming the award for pain and suffering, adopted the interpretation of the phrase, "permanent loss of bodily function" as enun-

ciated by the trial court[9] in that case:

> At the outset of the trial and in his opinion, Judge Berel Caesar interpreted the phrase permanent loss of a bodily function to mean a diminution of function in the nature of a permanent loss of a range of motion to a degree that is statistically significant. 539 A.2d at 513, 514.

The Commonwealth Court found that the above definition was consistent with the United States District Court's definition of the phrase in *Savitt*. The plaintiff in *Savitt* was a resident of New York State. Her injuries arose from a motor vehicle accident in downtown Philadelphia. A City of Philadelphia police car, unable to come to a complete stop at an intersection, struck Mrs. Savitt's vehicle. The issue in that case was whether to apply the law of Pennsylvania or New York in determining plaintiff's claim for damages. Pennsylvania law was applied and the jury was instructed about "permanent loss of a bodily function" as follows:

> A permanent loss of a bodily function means that the plaintiff, as a [proximate] result of the accident, can no longer perform a physical act or acts which she was capable of performing prior to injury proximately resulting from the accident, and that this loss of bodily function is permanent, that is that this loss of bodily function will exist for the remainder of her [Mrs. Savitt's] life. *Id.*, at 328.

The Commonwealth Court correctly concludes that the two definitions are consistent. However, the interpretation by the *Savitt* court is a more workable standard, reflecting the intention of the legislature. When interpreting the words of a statute, the rules of construction require that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a); *Commonwealth v. Stanley*, 498 Pa. 326, 446 A.2d 583 (1982). Therefore, we hold that the phrase "permanent loss of a bodily function" means that as a proximate result of the accident, the

---

**9.** The trial Judge in *Owens* was The Honorable Berel Caesar, the trial Judge in the case at bar.

injured claimant is unable to do or perform a bodily act or bodily acts which the claimant was able to do or perform prior to sustaining the injury and that the loss of such ability is permanent.

■ Turning to the facts of this case, according to the stipulation of facts, the plaintiff has no orthopedic functional deficits, but has a subjective feeling that the leg will not fully extend. The expert medical testimony, however, indicates that plaintiff has regained full range of motion in his left knee and ankle. Plaintiff's decision to refrain from athletic competition was a personal decision not prompted by medical advice. Therefore, plaintiff has failed to establish that he is presently "unable to do or perform a bodily act which he was able to do or perform prior to the injury." We hold, therefore, that the plaintiff is not entitled to damages for "a permanent loss of a bodily function."

■ Next we address plaintiff's claim that he has suffered a "permanent disfigurement." Initially, we note that this phrase has not yet been interpreted by this or any other Court of the Commonwealth.[10] Before reaching the merits of plaintiff's claim, we must dispose of the defendant's allegation that the issue was not properly preserved for review.

The defendant asserts that plaintiff did not raise this issue until post trial motions. The trial court found some merit to this claim. However, it chose to review the issue since the proceedings had not been transcribed. The claim for "permanent disfigurement" stems from the atrophy of plaintiff's left quadricep and calf. Our review of the pleadings and record show that the allegation was made in the plaintiff's complaint, it appears in the stipulation of facts, was preserved in post trial motions, was the subject of plaintiff's cross appeal to the Commonwealth Court, and was specifically included in plaintiff's Petition for Allow-

10. In their opinion, the Commonwealth Court did not reach the plaintiff's claim for pain and suffering as the court disposed of the case holding that the City was immune from suit under the provisions of the RUA.

ance of Appeal to this Court. The defendant's claim that this issue was not properly preserved is meritless. The issue was not waived.

As stated immediately above, the words of a statute must be construed according to their plain meaning. *Stanley, supra.* With this proviso in mind, we turn to *Black's Law Dictionary,* 5th. ed., for the meanings of the words "permanent" and "disfigurement":

**Permanent.** Continuing or enduring in the same state, status, place, or the like, without fundamental change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient.

**Disfigurement.** That which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner.

The "permanent disfigurement" plaintiff Walsh has suffered, according to the uncontroverted opinions of two medical experts, is a permanent atrophy of the left quadricep and calf. The record clearly supports the conclusion that plaintiff has a noticeable half-inch difference in the size of his left quadricep and calf as a result of the injury he sustained due to the negligence of the defendant. Plaintiff has established sufficient facts to merit an award for pain and suffering under the statute.

As we have determined that the City of Philadelphia is not immune from liability in this case under the Recreation Use of Land and Water Act, the decision of the Commonwealth Court is reversed. The matter is remanded to the trial court for an award of damages on the claim for pain and suffering consistent with the parties stipulation.

Reversed and Remanded.

NIX, C.J., files a dissenting opinion in which McDERMOTT, J., joins.

McDERMOTT, J., files a dissenting opinion.

NIX, Chief Justice, dissenting.

Once again I must dissent from the majority's misinterpretation of the Recreational Use Act, 68 Pa.C.S. § 477.1 *et seq.* ("RUA"). The majority here perpetuates the strained reasoning by which it exempted the defendant in *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 27, 507 A.2d 1, (1986) (Nix, C.J., dissenting), from immunity. As I stated in *Rivera,* no basis exists in the RUA for an exclusion for improved land. The language of the statute expressly provides that "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." 68 P.S. § 477–3. "Land" by definition includes the buildings and structures thereon. 68 P.S. § 477–2.

However, even accepting the conclusion by the majority in *Rivera,* the instant facts are clearly distinguishable. In *Rivera,* the swimming pool was enclosed and the Seminary controlled access to it by requiring advance notice and supervision by a priest or member of the Seminary. *Rivera, supra,* 510 Pa. at 12, 507 A.2d at 6. Conversely, the Guerin Recreational Center is open to the public without restriction. Certainly this is the type of land use the Act was designed to encourage. Any interpretation of the Act which denies the City immunity under these circumstances serves no function other than to frustrate the purpose of the RUA, which is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability . . . ." 68 P.S. § 477–1.

Moreover, the creation of a playground does not require the type of improvements contemplated by the *Rivera* court. Rather, it preserves "large, private land holdings for outdoor recreational use," [1] *Rivera, supra,* 510 Pa. at 15,

---

1. The majority concedes, despite this statement by the court in *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1, that the Recreational Use Act, 68 P.S. § 477.1, *et seq.,* makes no distinction between private or public ownership of land. *See Commonwealth of*

507 A.2d at 8, consistent with this Court's interpretation of the Act. The minor adjustments which change land into a recreational facility are the kinds of "ancillary structures attached to open space lands made available for recreation" that the *Rivera* court deemed permissible under the Act. *Id.*

Accordingly, I would affirm the Commonwealth Court's holding that the City is immune from suit.

McDERMOTT, J., joins this dissenting opinion.

McDERMOTT, Justice, dissenting.

I dissent from the opinion of the majority for several reasons. The first reason concerns the statement contained in footnote 3, which recites that the appellee, City of Philadelphia, waived the defense of immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8542. Recently in *In re Tax Claim Unit of Northampton County*, 522 Pa. 230, 560 A.2d 1388 (1989) this court determined that the defense of governmental immunity was a defense incapable of waiver. Here, although the claim arguably fell within one of the exceptions to that immunity, 42 Pa.C.S.A. § 8542(b)(3), the above referred to statement is in sharp contravention to our prior assessment of the law in that area. Secondly, a plain reading of the Recreational Use Act does not support the majority's interpretation that the act was intended only to apply to owners of unimproved realty. In fact in the definition of land, as contained in the act, the term "land" was stated to include: roads; water; watercourses; private ways and buildings; structures and machinery or equipment when attached to the realty. 68 P.S. § 477-2(1). Clearly the inclusion of these items belies the majority's conclusion that only owners of unimproved realty are protected. To so hold is to ignore the spirit of the legislature which in enacting the statute "balanced danger against a benefit to a great number of people; allowing a use of facilities with immunity from liability, great and

*Pennsylvania, Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986).

small, so that many could have what the possible consequences for an injury to one, would make improvident to give to any." *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 34, 507 A.2d 1, 18 (1986). *See also Commonwealth of Pennsylvania Department of Environmental Resources v. Auresto*, 511 Pa. 73, 511 A.2d 815 (1986), *Hahn v. United States*, 493 F.Supp. 57 (D.C.Pa.1980) and *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981).

Accordingly, I dissent and join the dissent of Mr. Chief Justice NIX.