**Betty Jean SMITH, Appellant**

v.

**ENDLESS MOUNTAIN TRANS- PORTATION AUTHORITY and Jack Nares.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided July 5, 2005.

James T. Rague, Wellsboro, for appellant.

Richard L. Orwig, Reading, for appellee.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Betty Jean Smith (Smith) appeals from the order of the Court of Common Pleas of Tioga County (trial court) that granted the motion for summary judgment of Endless Mountain Transportation Authority (EMTA) and its employee Jack Nares (Nares). We affirm.[1]

Smith is an adult individual confined to a wheelchair due to a pre-existing condition which renders her unable to care for herself. She resides at a long-term nursing care facility in Wellsboro, Tioga County, Pennsylvania. EMTA is a municipal authority primarily engaged in providing public transportation, including specialized transportation services for the physically disabled, to the residents of Tioga County and neighboring counties.

On October 2, 2001, arrangements were made to transport Smith in an EMTA van to a routine medical examination at the Veteran's Hospital in Bath, New York. Her two sisters accompanied her. On that day, Nares, an employee of EMTA, placed Smith in her wheelchair into the left slot in the back of the van. He secured the wheelchair with four tie-downs and proceeded to operate the van. While Nares was driving onto a highway access ramp, Smith's wheelchair fell over inside the van and she struck her head on the metal chair lift. As a result of the accident, Smith suffered a C–1 fracture producing cervical pain. She was required to temporarily wear a halo device.

On June 4, 2002, Smith filed a complaint alleging that Nares, acting in the scope of his employment, failed to properly secure the wheelchair and that EMTA provided defective equipment which was inadequate to properly secure the wheelchair in the van. Significantly, the com-

---

1. Our review of a decision granting summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Westmoreland County v. RTA Group, Inc.,* 767 A.2d 1144 (Pa. Cmwlth.2001). We examine the entire record in the light most favorable to the non-moving party. *Id.* An award of summary judgment will be affirmed only where there is no genuine issue of material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Id.*

plaint characterized EMTA as a Commonwealth agency. EMTA then filed preliminary objections in the nature of a demurrer asserting, *inter alia*, that it was a local agency entitled to governmental immunity. After reviewing the preliminary objections, the trial court concluded that EMTA was a local agency and ordered Smith to amend the complaint accordingly; she complied under protest. In the amended complaint, Smith also alleged that she suffered the following damages: fracture of the C–1 vertebrae, rib fracture, contusions and abrasions, pain and suffering, embarrassment and humiliation, and severe mental distress.

After the parties completed discovery, EMTA filed a motion for summary judgment. The trial court denied the motion as to liability but granted summary judgment in EMTA's favor on the basis that Smith could not meet the damages threshold set forth in Section 8553 of the Judicial Code (Code).[2] This appeal followed.

■ We must determine whether the trial court erred in ordering Smith to amend her complaint to identify EMTA as a local agency, rather than a Commonwealth agency, pursuant to EMTA's preliminary objections. We must also address the issue of whether the trial court erred in granting summary judgment in favor of EMTA on the basis that Smith failed to meet the statutory damages requirement set forth in Section 8553 of the Code.

Procedurally, Smith argues that the trial court's order to amend the complaint by naming EMTA as a local agency was "premature" and that it improperly relieved EMTA of its burden to plead and prove local agency status pursuant to Pa. R.C.P. 1030 (providing, *inter alia*, that immunity must be pled as an affirmative defense).

■ We disagree. If an immunity defense is clear on the face of the complaint, it may be properly raised as a preliminary objection. *Miller v. Kistler*, 135 Pa. Cmwlth. 647, 582 A.2d 416 (1990). In turn, Smith should have challenged EMTA's preliminary objections by filing her own preliminary objections. *Gallagher v. City of Philadelphia*, 142 Pa.Cmwlth. 487, 597 A.2d 747 (1991).

In *Gallagher*, the plaintiffs commenced a medical malpractice action alleging that the defendants were Commonwealth agencies subject to one of the enumerated exceptions to sovereign immunity. The defendants filed preliminary objections in the nature of a demurrer, asserting that they were local agencies entitled to *governmental* immunity. The court of common pleas sustained the preliminary objections and dismissed the complaint, concluding that the defendants were local agencies, protected by the governmental immunity provisions (which do not contain an exception for medical malpractice). We affirmed on appeal, finding that the plaintiffs' failure to file preliminary objections to the defendants' preliminary objections constituted a waiver of the right to challenge both the premature assertion of immunity and the court's dismissal of the complaint.

Therefore, based on *Gallagher*, we conclude that Smith waived any argument she could have made regarding the trial court's order to amend the complaint, which effectively determined the issue of EMTA's status for immunity purposes.[3]

2. 42 Pa.C.S. § 8553.

3. The issue of whether EMTA is considered to be a local or Commonwealth agency is critical to Smith's claim in this case. While recovery of pain and suffering damages against a local agency is restricted under the governmental immunity statute, that restriction is absent in cases involving a Commonwealth agency and sovereign immunity. *See* Section 8528 of the

■ We next address whether the trial court erred in determining EMTA's status for immunity purposes. We note that Smith identifies no fact or law to support a finding that EMTA was created as a Commonwealth agency. EMTA, however, attached to its preliminary objections the resolutions passed by all of the counties involved in creating EMTA as a joint municipal authority pursuant to Section 4 of the former Municipality Authorities Act of 1945(MAA), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 306 (establishing the purposes and powers of municipal authorities).[4] (R.R. 29a–50a) EMTA also attached the certificate of incorporation issued by the Commonwealth, indicating that EMTA was created under the MAA. (R.R. 50a) Based on these documents, we believe that the trial court had sufficient evidence to support a finding that EMTA was a local agency for purposes of immunity. Consequently, we find that the trial court did not err in ordering Smith to amend the complaint accordingly.

■ In the context of tort claims filed against local agencies, Section 8553(c)(2)(ii) of the Code[5] limits recovery of damages for pain and suffering to cases involving permanent loss of a bodily function, permanent disfigurement, or permanent dismemberment. The Supreme Court has defined "permanent loss of a bodily function" to mean that as a proximate result of an accident, the injured claimant is unable to do or perform a bodily act which the claimant was able to do or perform before sustaining the injury and that the loss of such ability is permanent. *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991).

Smith argues that her own deposition testimony, combined with that of her medical witness, neurosurgeon Dr. Rajjoub, create issues of fact as to whether she suffered permanent loss of a bodily function as a result of the accident. Therefore, she believes the trial court erred in refusing to allow the case to proceed to a jury trial.

To support this contention, Smith cites *Boyer v. City of Philadelphia,* 692 A.2d 259 (Pa.Cmwlth.1997), where the court of common pleas granted the city's request for a compulsory non-suit on the basis that the plaintiff's medical witness equivocated regarding the issue of permanent loss of a bodily function. We reversed, finding that the plaintiff presented sufficient evidence to allow the jury to determine that issue. However, *Boyer* is distinguishable because the evidence in that case, namely a physician's testimony that the plaintiff's neck injury resolved but that the plaintiff suffered worsening arthritis in his back that might interfere with his ability to perform certain activities, presented a factual dispute regarding whether the plaintiff suffered permanent loss of a bodily function as a proximate result of the accident. Thus, we found that the issue should have been resolved by the jury.

Here, there is simply no evidence in the record creating a dispute of material fact regarding whether Smith suffered permanent loss of a bodily function. Dr. Rajjoub's deposition testimony establishes the following: (1) as a result of the accident, Smith fractured her C–1 vertebrae,

---

Code, 42 Pa.C.S. § 8528. Had EMTA been characterized as a Commonwealth agency by the trial court, it appears that Smith would have likely survived summary judgment on the damages issue.

4. Section 4 of the MAA was repealed by the Act of June 19, 2001, P.L. 287 and reenacted as Section 5607 of the new Municipality Authorities Act, 53 Pa.C.S. § 5607.

5. 42 Pa.C.S. § 8553(c)(2)(ii).

(2) Smith was required to wear a halo device from October 17, 2001 through January 15, 2002 to stabilize the fracture, and (3) the bone healed but Smith will always have an abnormality in the form of a callous. Smith highlights the following testimony of Dr. Rajjoub as raising a fact issue regarding permanent loss of a bodily function:

Q. Okay, so the bone had healed?

A. The bone healed. There would be callus. There would be callus around where the bone is healing. It will never go back to normal, never, ever. It's the same thing if you break your arm. If you put the external device you would have callus. If you break your clavicle you would have callus. It never goes back straight. (R.R. 122a)

Without evidence suggesting that the callus attributable to the accident somehow prevents Smith from performing a bodily function that she was able to perform before the injury, this testimony fails to raise a question of fact sufficient to survive summary judgment on the issue of damages.

Smith further maintains that her own deposition testimony indicating that she: (1) continues to suffer neck pain associated with the fracture and (2), voluntarily wears a neck brace to alleviate that pain, raises material questions of fact regarding permanent loss. We again disagree.

█ The Supreme Court in *Walsh* interpreted Section 8553(c)(2)(ii) of the Code to require that any residual pain be manifested as a permanent loss of bodily function to qualify for pain and suffering damages against a local agency. The statutory provisions limiting damages recoverable from local agencies should be interpreted broadly. *Gloffke v. Robinson*, 575 Pa. 193, 835 A.2d 1288 (2003); *Walsh.*

Smith, who has suffered from multiple sclerosis for 30 years, was significantly restricted in the activities she could perform *before* the accident, including walking and dressing herself. There is nothing in the record indicating that Smith experienced a loss in her ability to perform any bodily function after the incident that she had been able to perform before the accident. In fact, Dr. Rajjoub testified that Smith has resumed her normal activities and that he no longer treats her for the cervical injury. Smith's sisters testified that Smith enjoys the same level of activity and lifestyle as she did prior to the accident. Smith herself admitted that she suffered no loss of bodily function, and has not altered her lifestyle in any manner since the accident.

Absent evidence indicating that the pain somehow interferes with her ability to perform a bodily function, Smith's testimony that she continues to suffer neck pain and voluntarily wears a neck brace to alleviate it, fails to meet the *Walsh* standard.

Because the record contains no evidence that could possibly support a finding that Smith suffered permanent loss of a bodily function, summary judgment was appropriate. Accordingly, we affirm the trial court's order.

## *O R D E R*

AND NOW, this 5th day of July, 2005, the November 2, 2004 order of the Court of Common Pleas of Tioga County is hereby AFFIRMED.