Victoria HUTTO

v.

**PHILADELPHIA PARKING AUTHORITY and Everett Brown, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 5, 2015.

Decided June 9, 2015.

Michael Casey, Philadelphia, for appellants.

Stuart I. Leon, Philadelphia, for appellee.

BEFORE: ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge MARY HANNAH LEAVITT.

The Philadelphia Parking Authority appeals an order of the Court of Common Pleas of Philadelphia County (trial court) that denied the Parking Authority's motion for post-trial relief following a non-jury trial in a personal injury action. The Parking Authority argues that the trial

court improperly awarded the plaintiff, Victoria Hutto, damages for pain and suffering. For the reasons that follow, we affirm.

On June 27, 2012, Hutto was riding her bike when she was struck by a tow truck owned and operated by the Parking Authority. Hutto sustained injuries to her shoulder. Hutto filed a complaint against the Parking Authority and the tow truck driver, Everett Brown, arguing that Brown was negligent in the course and scope of his employment. In its answer, the Parking Authority denied liability and asserted the affirmative defense of immunity under the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542.

A non-jury trial was held on October 20, 2014. Hutto testified that prior to the accident she frequently jogged, played tennis, and danced. She rode her bike to work daily because she did not own a car. At the time of the accident, Hutto worked at Ikea. Her job required her to hang displays weighing between 20 and 40 pounds, which she could not do after the accident.

Hutto also testified that after the accident she was unable to resume the lifestyle she had previously enjoyed. Specifically, on direct examination, Hutto testified as follows regarding her level of activity after the accident:

> [Counsel for Hutto]: Have you gotten back to riding the long rides that you described for us before . . .
>
> [Hutto]: No. Its [sic] uncomfortable. It's not enjoyable anymore.
>
> [Counsel for Hutto]: What do you feel like when you try to ride a longer distance.
>
> [Hutto]: It's like very tender in the joint in my shoulder pulling myself up. I

fatigue. I have shooting pains down my leg when I pedal. It hurts to hold my neck up and look ahead because it's tight.

> [Counsel for Hutto]: Are there any sports that you used to play before this 2012 crash?
>
> [Hutto]: Tennis, recreationally.
>
> [Counsel for Hutto]: Have you returned to playing tennis? [Hutto]: No.
>
> [Counsel for Hutto]: Why not?
>
> [Hutto]: Because I am using my right arm to like swing around, and it's just not comfortable.

Reproduced Record at 54a (R.R. ——). On cross-examination, counsel for the Parking Authority questioned Hutto further on her physical limitations:

> [Counsel for the Parking Authority]: Now, Ms. Hutto, is there any kind of activity that you cannot do right now that you could do before this accident happened?
>
> [Hutto]: There are certain things that I don't do because I am worried about more injury because that is a possibility. I can do just about everything I did before but not without pain or discomfort, so I can't do them as long as I did.
>
> [Counsel for the Parking Authority]: I understand, but you can do these activities that you're referring to?
>
> [Hutto]: Yes.

R.R. 57a. When asked about her ability to carry items, Hutto responded, "I can carry lightweight now. Probably [a] maximum [of] 25 pounds. . . . I can't hold my arm up for like an extended period of time. It fatigues." R.R. 50a.

Shortly after the accident, Hutto took a new job with Urban Outfitters, in part, because it was less physically demanding than her former job. She testified:

> I am making slightly more money, but I couldn't physically do my job at Ikea

that I needed to do that I was doing before. I couldn't do it by myself.... I felt that [Urban Outfitters] would work better with my body and that I could contribute more.

R.R. 52a.

Hutto submitted several medical reports into evidence. The two most recent reports were written by Dr. Norman Stempler, who was recommended to Hutto by her attorney. In his first report, dated May 19, 2014, Dr. Stempler concluded that "[i]n my professional opinion within a reasonable degree of medical certainty, there is a direct causal relationship between all of the patient's complaints, my diagnoses, and the incident related. Prognosis is uncertain." R.R. 88aa(4). In his second report, dated July 3, 2014, Dr. Stempler concluded that as a result of the accident with the Parking Authority truck, Hutto "suffered some permanent injury in that she has permanent disability." R.R. 89a. Hutto also submitted the reports of two other doctors who had treated her. Neither doctor reached the same conclusion as Dr. Stempler regarding the permanency of Hutto's injury.

The Parking Authority submitted into evidence a report written by Dr. Menachem Meller, who conducted an independent medical examination of Hutto. Dr. Meller wrote:

In my opinion, no further treatment is necessary with regard to the injury described. There has been apparently no permanency and no significant loss of function.

R.R. 98a.

At the conclusion of the trial, the trial court orally provided findings of fact and conclusions of law from the bench. The trial court found that the Parking Authority was 100% negligent for the accident. As a result of the accident, Hutto incurred medical expenses in the amount of $3,675 and suffered a loss of wages in the amount of $2,500. The property damage to Hutto's bike was $257.70. For these reasons, the trial court awarded Hutto $6,432.70 in economic damages. The trial court further concluded that Hutto's "testimony regarding limitations she suffered relative to her shoulder as well as the medical evidence submitted by counsel for both [Hutto] and [the Parking Authority] satisfies the permanency requirement of" the Tort Claims Act. R.R. 69a. Accordingly, the trial court awarded Hutto $30,000 for pain and suffering, for a total award of $36,432.70.

The Parking Authority filed a motion for post-trial relief asserting immunity from damages for pain and suffering under the Tort Claims Act because Hutto had not proven she was permanently injured. The Parking Authority requested the trial court modify its order and award Hutto $6,432.70 in economic damages. The trial court denied the Parking Authority's motion on October 30, 2014. The present appeal followed.

■ On appeal,[1] the Parking Authority argues that the trial court's conclusion that Hutto sustained a permanent loss of a bodily function is not supported by competent evidence. It contends that Hutto showed only pain and suffering from which it is immune from damages under the Tort Claims Act. The Parking Authority asks this Court to reverse the trial court's order with respect to its $30,000 damage award. Hutto counters that she met her burden of

---

1. In reviewing the verdict rendered in a non-jury trial, this Court determines whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error of law. *Selfspot, Inc. v. Butler County Family YMCA*, 987 A.2d 206, 216 n. 5 (Pa.Cmwlth.2010).

showing a permanent injury for purposes of the Tort Claims Act.

■ As a local agency, the Parking Authority is generally immune from civil liability for its employees' actions under the Tort Claims Act. *Oliver v. Tropiano Transportation, Inc.,* 79 A.3d 1233, 1238 (Pa.Cmwlth.2013). There is an exception for injuries caused by the operation of an agency's motor vehicle, which is applicable here. Section 8542(b)(1) of the Tort Claims Act, 42 Pa.C.S. § 8542(b)(1).[2] Even where an enumerated exception to immunity exists, however, there are limitations on the damages recoverable by the plaintiff. Damages for pain and suffering are recoverable only in cases involving death or "permanent loss of a bodily function, permanent disfigurement, or permanent dismemberment." Section 8553(c)(2)(ii) of the Tort Claims Act, 42 Pa.C.S. § 8553(c)(2)(ii).[3]

The seminal case is *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991). In that case, the plaintiff, Walsh, tripped in a hole on the basketball court at a city recreation center and fractured his left ankle. Walsh had to wear three different casts on his leg over a period of six months. After the casts were removed, Walsh resumed his previous employment with no change in duties. Nevertheless, he continued to experience aches and soreness, which led him to quit playing sports. The doctors who examined Walsh found no objective evidence to support his continued complaints or any reason to restrict his physical activities. The question was whether Walsh suffered a "permanent loss of a bodily function" under Section 8553(c)(2)(ii) of the Tort Claims Act. Our Supreme Court held that because Walsh had made a personal choice to abstain from particular activities, due solely to subjective complaints, he was not permanently injured and could not recover pain and suffering damages from the city. The Supreme Court construed a permanent loss to mean "the injured claimant is unable to do or perform a bodily act or bodily acts which the claimant was able to do or perform prior to sustaining the injury and that the loss of such ability is permanent." *Walsh,* 585 A.2d at 452.

This Court's decision in *Smith v. Endless Mountain Transportation Authority,* 878 A.2d 177 (Pa.Cmwlth.2005), is instructive. In that case, the plaintiff, Smith, struck her head when her wheelchair fell over inside a transit authority's van. Smith presented evidence that she fractured one of her vertebrae, and chose to

---

**2.** Section 8542(b)(1) of the Tort Claims Act provides that a local agency may be liable for damages caused by the following:

*Vehicle liability.*—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8542(b)(1).

**3.** Section 8553 states in relevant part:

(c) Types of losses recognized.—Damages shall be recoverable only for:

(1) Past and future loss of earnings and earning capacity.

(2) Pain and suffering in the following instances:

(i) death; or

(ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

42 Pa.C.S. § 8553(c).

wear a neck brace to relieve her pain. Notably, her physician testified that she could resume all the activities she performed prior to the accident. The trial court held that she failed to prove a permanent loss of a bodily function. On appeal, this Court agreed with the trial court, noting that the plaintiff enjoyed the same lifestyle after the accident that she had enjoyed prior to the accident. Her subjective complaints that she still occasionally felt pain were insufficient to show she had a permanent injury. We explained that

> [a]bsent evidence indicating that the pain somehow interferes with her ability to perform a bodily function, [the plaintiff's] testimony that she continues to suffer neck pain and voluntarily wears a neck brace to alleviate it, fails to meet the *Walsh* standard.

*Id.* at 181.

Here, the Parking Authority contends that the physical conditions of the plaintiffs in *Walsh* and *Endless Mountain* cannot be distinguished from Hutto's condition. First, the Parking Authority cites Hutto's testimony that

> [t]here are certain things that I don't do because I am worried about more injury because that is a possibility. *I can do just about everything I did before but not without pain or discomfort,* so I can't do them as long as I did.

R.R. 57a (emphasis added). Second, the Parking Authority argues that Dr. Stempler's July 3, 2014, report that Hutto "has permanent disability" is not competent evidence; therefore, Hutto's decision to abstain from certain activities was voluntary. We reject the Parking Authority's arguments.

In regards to the Parking Authority's first argument, Hutto testified that she is able to do "just about everything" she could do before the accident. This is not the same as being able to do everything she did before the accident. Hutto also testified that she can no longer do work that requires lifting objects over her head. This physical limitation prompted Hutto to resign her position at Ikea. Hutto further testified that she continues to suffer a lack of mobility. The Parking Authority has cherry-picked statements from Hutto's testimony to develop its argument. However, when read in its entirety, Hutto's testimony supports the trial court's conclusion that she has not returned to the same lifestyle she enjoyed prior to the accident. Her reasons not to return to her prior level of physical activity were not a matter of choice, but physical inability.

Next, the Parking Authority contends that Dr. Stempler's July 3, 2014, report was not competent evidence because it is inconsistent with his report of May 19, 2014. In his first report Dr. Stempler wrote that his diagnosis of Hutto was "uncertain." R.R. 88aa(4). In his second report, issued two months later, Dr. Stempler concluded that Hutto's injury was permanent even though he did not physically examine Hutto after the first report. The Parking Authority suggests that it is suspicious that a doctor to whom Hutto was referred by counsel changed his opinion only four months before Hutto filed her complaint.[4]

In addition, the Parking Authority contends that Dr. Stempler's July 3, 2014, report was not entitled to be credited because other doctors reached the opposite

---

4. Even so, Dr. Stempler's July 3, 2014, report does not contradict his report of May 19, 2014. The first report provided a diagnosis of Hutto's "serious injuries." The second report simply addressed the specific question of which of her injuries were permanently disabling. Dr. Stempler found some injuries to be permanent and others not. It was within the trial court's prerogative to credit both reports.

conclusion regarding Hutto's recovery. On January 7, 2013, Dr. Charles Getz wrote:

> PLAN: I discussed with [Hutto] at this point, I cannot relate most of her symptoms to the AC [acromioclavicular] joint itself. While she may benefit from AC joint stabilization, I do not think that she will be completely happy with the outcome as much of her symptoms I do not think are related to her AC joint.

R.R. 93a–94a. Nearly one year later, Dr. Barbara Frieman wrote that Hutto's "AC separation which I have seen her for in the past does appear to be a stable healed second-degree AC separation and it does not appear to require any surgical treatment as this time." R.R. 91a. These reports do not directly contradict Dr. Stempler; they simply establish that Hutto did not need surgery.

The Parking Authority also points to the opinion of its medical expert who examined Hutto on April 22, 2014, and reported that, "[i]n my opinion, no further treatment is necessary with regard to the injury described. There has been apparently no permanency and no significant loss of function." R.R. 98a. This report directly contradicts Dr. Stempler's report; however, it does not matter to the Parking Authority's appeal.

 Essentially, the Parking Authority asks this Court to reweigh the evidence considered by the trial court. This we cannot do. This Court may consider only whether the trial court's findings are supported by substantial evidence. The factfinder is responsible for weighing evidence, not this Court. *Littlestown Hardware and Foundry Co., Inc. v. Workmen's Compensation Appeal Board*, 58 Pa.Cmwlth. 647, 428 A.2d 774, 775 (1981). Dr. Stempler's July 3, 2014, report was competent evidence and supports the trial court's conclusion that Hutto suffered a permanent disability. In short, the trial court's conclusion that Hutto cannot do the same bodily acts as she was able to perform prior to her injury is supported by Hutto's testimony and the medical evidence.

For these reasons, we affirm the order of the trial court.

## ORDER

AND NOW, this 9th day of June, 2015, the order of the Court of Common Pleas of Philadelphia County dated October 30, 2014, in the above-captioned matter is hereby AFFIRMED.

<br>

**B.B. In re: J.K., Petitioner**