615 A.2d 743

John S. REDINGER, and Earline Redinger,
His Wife, Appellants,

v.

CLAPPER'S TREE SERVICE INC. and Dr. and Mrs.
A. L. Garver Memorial Y.M.C.A.–Y.W.C.A. and
Pennsylvania Electric Co.

Superior Court of Pennsylvania.

Argued April 1, 1992.

Filed Oct. 30, 1992.

Samuel H. Geld, Altoona, for appellants.

Anthony W. Hinkle, Pittsburgh, for appellee Garver Memorial.

Before KELLY, FORD ELLIOTT and CERCONE, JJ.

FORD ELLIOTT, Judge.

Appellants appeal from the granting of summary judgment by the trial court. Briefly, the trial court was of the opinion that appellants' suit against appellee Y.M.C.A. was barred by the Recreation Use of Land and Water Act (hereinafter RULWA), 68 P.S. § 477-1 *et seq.* Plaintiff was injured by a falling tree limb while attending his son's Little League baseball game at a diamond constructed upon appellee Y.M.C.A.'s land. Appellee Clapper's Tree Service had been hired by appellee Y.M.C.A. to care for the trees on the property and to remove rotted and/or dead trees. The tree limb in question broke off and fell after it made contact with overhead power lines owned by appellee Pennsylvania Electric Company. The order under review granted summary judgment only as to appellee Y.M.C.A.

No fee was charged appellant husband to enter upon the land. The land in question was situated in a residential area of Roaring Spring, Pennsylvania, and occupied approximately an entire town block. The record is not entirely clear, but it

appears that the baseball field occupied most, if not all, of the plot of land.

The core issue presented is whether the nature of the land and the land's location in a residential area take the property out of the purview of the RULWA, 68 P.S. § 477–6(1). A secondary issue is whether allegedly willful and malicious conduct on the part of appellee Y.M.C.A. falls under one of the exceptions to the RULWA. For the reasons which follow, we believe that appellant husband's injury occurred on a part of appellee Y.M.C.A.'s land that is of a type contemplated by the RULWA and that the conduct of appellee Y.M.C.A. was not willful and malicious; therefore, we will affirm the order entered July 3, 1991, granting summary judgment.

We begin our analysis by reiterating the standard to be employed when considering a motion for summary judgment:

[Summary judgment] shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b). *See also Klineburger v. Maritrans,* 404 Pa.Super. 490, 591 A.2d 314 (1991), *allocatur denied,* 529 Pa. 635, 600 A.2d 954 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1762, 118 L.Ed.2d 425 (1992). When reviewing a grant of summary judgment, we should not disturb the trial court's ruling unless there has been either an error of law or a manifest abuse of discretion. *Hackenberg v. SEPTA,* 384 Pa.Super. 335, 558 A.2d 860 (1989), *allocatur granted,* 524 Pa. 597, 568 A.2d 1247 (1989), *affirmed,* 526 Pa. 358, 586 A.2d 879 (1991).

Pennsylvania's RULWA is virtually identical to the proposed model act: [1]

### § 477–1.  Purpose; liability

The purpose of this act is to encourage owners of land to make land and water areas available to the public for

---

1. *See* "Public Recreation on Private Lands: Limitations on Liability," XXIV Suggested State Legislation 150–52 (Council of State Governments, 1965).

recreational purposes by limiting their liability toward persons entering thereon for such purposes.

## § 477–2. Definitions

As used in this act:

(1) **"Land"** means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

(2) **"Owner"** means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) **"Recreational purpose"** includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) **"Charge"** means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

## § 477–3. Duty to keep premises safe; warning

Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

## § 477–4. Assurance of safe premises; duty of care; responsibility, liability

Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

### § 477-5. Land leased to State or subdivision

Unless otherwise agreed in writing, the provisions of sections 3 and 4 of this act shall be deemed applicable to the duties and liability of an owner of land leased to the State or any subdivision thereof for recreational purposes.

### § 477-6. Liability not limited

Nothing in this act limits in any way any liability which otherwise exists:

(1) For wilful [sic] or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

### § 477-7. Construction of act

Nothing in this act shall be construed to:

(1) Create a duty of care or ground of liability for injury to persons or property.

(2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

As of 1988, 48 states had enacted some form of law limiting the liability of the landowner to those who come upon the property for a recreational purpose. Approximately 20 states have enacted essentially the model act.[2] Nevertheless, in spite of the apparent uniformity of legislation, we observe a widespread conflict among the jurisdictions as to exactly what

---

**2.** van der Smissen, Betty, *Legal Liability and Risk Management for Public and Private Entities,* Anderson Publishing Company, 1990, p. 190.

type of land is intended to be covered by the liability limitation:

> The case interpretations emphasize that the type of areas protected are those which are natural, unimproved, and undeveloped. Louisiana uses the term 'type normally encountered in true outdoors,' which does not include playground-slide in town park, a recreational area within a populated city adjacent to a much traveled lakeshore drive, a civic center, or a wooded area in the city administered by the park district. In California the court held that the immunity was only for unaltered natural condition areas. Other areas held by case law to be under the statute include tracts of woodland and wetlands, gravel pits, abandoned mine shaft, dirt bike track parallel to railroad, concrete drainage ditch, and an improved portion of property, such as a private roadway. And, in the other direction, *Boileau v. DeCecco* held that amending the New Jersey statute by inserting the word 'premise' did not enlarge the protected class of landowners to include homeowners in suburbia and did not confer immunity on an occupier of premises in a residential setting. However, a 1985 Michigan Appeals case protected homeowners in their backyards. The Delaware court held that the statute did not apply to urban or residential areas improved with pools, tennis courts and the like; but the Ohio court included residential pools within the statute. However, Michigan extended application of Recreational Land Users Act to city property located in urban areas and then reversed itself in 1987; and, a 1987 Nebraska case in a power district substation site held its law applicable to urban as well as rural areas. A 1984 Louisiana case held that playground bleachers were within the statute, but a 1986 Connecticut case held to the contrary on football stadium bleachers. In an earlier Oregon situation the court held that the premises of a church on which softball was being played was not included because it was not 'agricultural' land, and a school was not covered when a child was injured while playing near a football field. However, in two 1986 cases, it was held that a baseball field was

included within the statute. Playgrounds have been held not within the statute; however, a vacant lot used for informal recreation was held within the statute. The courts have held that an oil well pump site where young children played, a grass strip between sidewalk and trees in city park, and a street were not within the recreational user statute, nor were areas, although used for recreation, which were in a populous, urban, or residential area. Application of the statute to injuries occasioned on roadways seems to vary with the nature of the travel and road and the status of the traveler.

van der Smissen, Betty, *Legal Liability and Risk Management for Public and Private Entities,* Anderson Publishing Company, 1990, pp. 207–209 (footnotes omitted).

In spite of its conciseness and apparent simplicity, the RULWA has managed to weave a tortured tapestry of decisional law in a multitude of jurisdictions in which it has been enacted. At the heart of the dispute is the ascertainment of what nature of land is contemplated as being removed from liability under the Act. This thread of conflicting case law has not left our own Commonwealth untouched.

For instance, in *Lowman v. Indiana Area School District,* 96 Pa.Cmwlth. 389, 507 A.2d 1270 (1986), an infant seated in the bleachers at a high school baseball game was struck by an overthrown baseball and severely injured. In finding no liability, the court held that a baseball field as well as its appurtenant structures (fences, bleachers, backstop, etc.) was within the definition of land as defined under and intended by the RULWA. Six years later, a panel of the same court decided in *Seiferth v. Downingtown Area School District,* 145 Pa.Cmwlth. 562, 604 A.2d 757 (1992), that a lacrosse field was *not* within the definition of land under the RULWA. In *Seiferth,* a student lacrosse player was injured during practice when she fell because of a hole on the lacrosse field. In reaching its diametrically opposed finding of liability, the court never mentioned the holding in *Lowman.* The court instead ruled that the lacrosse field's status as an improvement to the land removed it from the RULWA. However, in fairness to

the Commonwealth court, we note that the latter panel was no doubt influenced by intervening decisions of our supreme court.

Our supreme court first addressed the scope of the immunity provisions of the Act in *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1 (1986). In *Rivera*, a young boy drowned in the indoor swimming pool owned and operated without fee by the defendant seminary. In holding that liability was not barred by the RULWA, the supreme court stated,

> The Recreation Use Act is therefore designed to encourage the opening up of large, private land holdings for outdoor recreational use by the general public by limiting the liability of the landowner. Considering that purpose, we believe the Legislature intended to limit the meaning of the words 'buildings, structures and machinery or equipment when attached to the realty' in Section 2 of the Act, 68 P.S. § 477–2, to ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions.

> The intention of the Legislature to limit the applicability of the Recreation Use Act to outdoor recreation on largely unimproved land is evident not only from the Act's stated purpose but also from the nature of the activities it listed as recreational purposes within the meaning of the statute. Specifically, with the exception of 'swimming,' which may be either an indoor or outdoor sport, the recreational activities enumerated in the statute are all pursued outdoors.

*Id.,* 510 Pa. at 15–16, 507 A.2d at 8.

In effect, the court focused on the type of land intended to be covered and the nature of the recreational activities contemplated by the Act, and determined that the Legislature intended to limit the applicability of the RULWA to outdoor recreational activities on largely unimproved land. In dissent, joined by Justices McDermott and Zappala, Chief Justice Nix took issue with what he considered to be the majority's narrow reading of the RULWA.

Both the majority opinion and appellee maintain that the Seminary, an urban building, does not fall within the scope of the Act. The Superior Court took the contrary view and concluded that an urban building could fall within the scope of the Act.

.    .    .    .    .

As the Superior Court aptly noted;

There is nothing unreasonable about applying the limited liability decreed by the legislature in a uniform manner to lands, whether urban, suburban or rural, which are made available for recreational use without charge. The broad language adopted by the legislature suggests most strongly that the legislature deemed the need for recreational lands in urban centers to be as great as the need therefor in rural areas of the State.

*Rivera v. Philadelphia Theological Seminary,* 326 Pa.Super. 509, 474 A.2d 605, 611 (1984).

.    .    .    .    .

An attempt to create an artificial exclusion to limit the owners of private property who would choose to open their lands for recreational purposes merely because the property is situated in an urban area, undercuts legislation such as the Act and frustrates the salutory [sic] purposes sought to be achieved.

Thus, because the Seminary is a building located in an urban area, it does not follow that the Seminary is not covered by the Act. Nowhere is it expressly stated in the Act that the recreational use must occur outdoors. I therefore believe it improper to create such a limitation by judicial fiat.

*Id.* 510 Pa. at 28–30, 507 A.2d at 16 (footnote omitted). Also in dissent, Justice McDermott, joined by the Chief Justice and Justice Zappala, focused merely on the recreational use of the land so as to afford immunity. He stated as follows:

The majority however, eschewing the clear intent of the General Assembly, ignores the obvious fact that the legislature, without comment, in plain words and intention, did not

mean to exclude those who cannot walk out their back door through leafy lanes to shining lakes, from the charity of those who offer indoor swimming pools in the hot and dusty city. The argument that they are excluded because they are easily supervised is ludicrous.

There is unexpected danger inherent in all recreational activities, whether it be the wild danger of the outback or a slip on a marble floor. The whole concept of immunity is the presence of danger. To say that a pond, lake, quarry, brook or swimming pool across a city line is immune when offered free to the public, but the same in an urban area is not, however comparable in size and danger, because it has a roof, is simply whimsical. The legislature balanced danger against a benefit to a great number of people; allowing a use of facilities with immunity from liability, great and small, so that many could have, what the possible consequences for an injury to one, would make improvident to give to any.

*Id.*, 510 Pa. at 33–34, 507 A.2d at 18.

Sifting through the various interpretations of the legislative intent of the Act as set out in the opposing views of *Rivera,* we are left with the conclusion that in addition to any requirements imposed directly under the RULWA, the majority holding required that in order for land to fall within the purview of the Act, it must be outdoors, largely unimproved and, inferentially, rural as opposed to urban. This gels with two policies that have been articulated as underlying the RULWA:

The first policy is the protection of the owners of large tracts of unimproved land. If a tract of land is large, the landowner will be disinclined to open it for public use because of the high costs of monitoring and maintaining the property. The RUA is intended to motivate this landowner to open his lands for public use by relieving him of the duty of monitoring and maintaining the property when the property is in public use. The size and remoteness of the property must be considered when determining whether property qualifies as land under the RUA. Large and

remote tracts are expensive to monitor and maintain and, therefore, should be protected. By contrast, smaller, readily accessible tracts of land are less costly to maintain and therefore should not qualify as land under the RUA....

The second policy underlying recreational use acts is the protection of the reasonable expectations of recreational users. Under this policy, two factors should dictate whether property qualifies as land under a recreational use act. The first factor to consider is the location of the land (urban versus rural). The second factor is the extent of improvements on the land.

It is more reasonable for the recreational user to expect that land located in urban (populated) areas will be maintained, and therefore such land should not be protected by the RUA.... The more improved the property, the more reasonable it is for the user to expect that the landowner has maintained it in a safe condition.

Renwand, Sandra M., "Beyond *Commonwealth v. Auresto:* Which Property Is Protected by the Recreation Use of Land & Water Act?," 49 U.Pitt.L.R. 261, 1987, pp. 277–80 (footnotes omitted). While our supreme court did not expressly state these policies in *Rivera,* certainly they were implicit in the rationale utilized by the majority therein.[3]

**3.** In a footnote, the *Rivera* court stated:

The need to limit owner liability derives from the impracticability of keeping large tracts of largely undeveloped land safe for public use. The same need does not arise in the case of indoor recreational facilities which, in contrast, are relatively easy to supervise and monitor for safety hazards. *See, e.g., Harrison v. Middlesex Water Co.,* 80 N.J. 391, 403 A.2d 910 (1979) (New Jersey's act applies specifically to certain enumerated outdoor activities which, ordinarily, can be accommodated only on large sized tracts of rural or semi-rural lands which are difficult to defend from trespassers and to make safe for invited persons engaging in recreational activity); *Tijerina v. Cornelius Christian Church,* 273 Or. 58, 539 P.2d 634 (1975) (Oregon act applies to landholdings which have recreational value but are not susceptible to adequate policing or curing of dangerous conditions). *See also* Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability,* 53 Wash.L.R. 1, 23 (1977) ("the amount of land owned by the defendant is important in determining whether the maintenance of safe conditions or adequate warning signs is practical[;] [f]airgrounds, a lakeside resort, a military reservation, and a twenty-seven

*Rivera* was soon followed by *Commonwealth Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986). *Auresto* held that the immunity afforded by the RULWA was available to the Commonwealth as well as to private landowners. The plaintiff in *Auresto* had been riding a snowmobile in Delaware State Forest when he struck a snow covered tree stump and was thereby injured. In holding that the RULWA barred liability, the supreme court did nothing to alter the principles of *Rivera.*

In the interlude between *Auresto* and the supreme court's latest pronouncement on the RULWA, the Commonwealth Court and this court have grappled with this issue. In *Walsh v. City of Philadelphia,* 126 Pa.Cmwlth. 27, 558 A.2d 192 (1989) (*Walsh I* ), *reversed,* 526 Pa. 227, 585 A.2d 445 (1991) (discussed, *infra* ), a panel of the Commonwealth Court held that an outdoor, urban cement playground constituted land within the meaning of the RULWA. The plaintiff in *Walsh I* was injured when he fell because of a hole in an asphalted surface located between basketball and bocce courts. In finding immunity, the court did not focus on whether the land was urban versus rural but rather focused on the question of the use to which the playground was put finding that the playground was outdoors and used for recreation and therefore immunity applied.

In *Zackhery v. Crystal Cave Company,* 391 Pa.Super. 471, 571 A.2d 464 (1990), a panel of this court followed the lead of *Walsh I* and declared a playground which was a part of a privately developed outdoor recreational facility to be land within the purview of the RULWA even though other portions of the facility would have been excluded.

In *Wurth by Wurth v. City of Philadelphia,* 136 Pa.Cmwlth. 629, 584 A.2d 403 (1990), an *en banc* panel of the Commonwealth Court, apparently having second thoughts about the court's decision in *Walsh I,* ruled that an urban playground is

acre pond have all been found within the intended scope of state recreational use statutes [while] an abandoned barge, a residential swimming pool, and a three-acre ball field have been held to be beyond the reach of such statutes" (footnotes omitted)).
*Rivera,* 510 Pa. at 15, 507 A.2d at 8, n. 17.

*not* per se land covered by the RULWA and remanded for additional fact finding. The court first distinguished *Walsh I* by noting that two judges concurred in the result only, and wrote separately to point out the vagueness of the standards drawn in *Rivera* and *Auresto.* The court went on to state that *Walsh I* was, therefore, without precedential value. In holding that the subject playground was *not within the ambit of* the RULWA, the court cited case law from other jurisdictions that interpreted similar recreational use acts and limited the application of such acts to undeveloped, open, and expansive rural and semi-rural properties, not to land in residential areas. The *Wurth* court went on to adopt logic akin to these cases:

> This Court notes that the litany of defined 'recreational purposes' under the Recreation Act, while not exhaustive, supports the interpretation that the act was intended to provide immunity for landowners who donated largely unimproved land for such 'outdoorsy' purposes: hunting, fishing, hiking, camping, picknicking [sic], etc.
>
> This Court therefore concludes that a playground is not per se land covered by the Recreation Act.

*Wurth,* 136 Pa.Cmwlth. at 643, 584 A.2d at 409. The *Wurth* court's analysis seems to be a faithful adherence to the principle set out in *Rivera.* Prior to 1991, the decisional law in this Commonwealth interpreting the RULWA focused, albeit in conflicting holdings, on the type of land covered by the Act and not specifically on its recreational purpose.

However, in 1991 our supreme court had an opportunity to revisit the Act in its reversal of the Commonwealth court's decision in *Walsh I* and in so doing the court appears to have abandoned *Rivera*'s exclusionary focus on the nature of the land in favor of one which is more inclusive and looks to the use and condition of the land covered by the Act. After *Walsh II,* it appears that any land no matter where situate is covered by the RULWA if used for recreational purposes; however such land may lose its immunity status if substantially improved and such improvement causes injury.

In *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991) (*Walsh II* ), the court stated:

> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the RUA was intended by the legislature to circumvent this basic principle of tort law.

*Walsh II,* 526 Pa. at 238, 585 A.2d at 450–51. The court did not specifically discuss whether an urban playground was the type of land covered by the RULWA; however it determined that the playground was excluded from the immunity provisions of the Act because it was a largely improved recreational facility and the plaintiff was injured because of these improvements. Implicit in such a ruling is that an urban recreation area, if unimproved (such as a city park), could be the type of land contemplated to be covered under the Act. *Walsh II* appears to indicate that the supreme court has turned toward a broader definition of land under the RULWA. This majority statement seems to move closer to the dissenting views as expressed in *Rivera* at least as to the type of land, urban versus rural, discussed therein. However, in dissent in *Walsh II,* Chief Justice Nix and Justice McDermott again argued for an even broader interpretation of the act to include any land used for any recreational purpose whether improved or unimproved.

■ Returning to the instant case, we determine that under the authority of *Walsh II,* we must hold that a fenced-in baseball field in a small community is land within the meaning of RULWA. However, while generally our next inquiry would focus on whether or not this land was improved within the meaning of *Walsh II* such that it would be beyond the purview of the Act, we find that such an inquiry is unnecessary under the facts of this case.

We note that while appellant husband was on appellee Y.M.C.A.'s land to observe a baseball game, his injury did not arise out any improvement to the baseball field. Appellant husband's injury was caused by a falling, decayed tree limb. Importantly, this limb came from a part of appellee Y.C.M.A.'s land which remained unimproved. For this reason, we believe the section of land upon which appellant husband's injury was occasioned was within the purview of the RULWA. Moreover, under the apparent implication of *Walsh II*'s policy of inclusion, the fact that the land in question was a partially developed, residential tract is of no consequence; unimproved portions of it may still come under the liability limitation of the RULWA.

■ This holding puts us in seeming conflict with a recent decision of the Commonwealth Court. In *Mills v. Commonwealth of Pennsylvania and Penn's Landing Corporation*, 145 Pa.Cmwlth. 558, 604 A.2d 755 (1992), *allocatur granted, Penns Landing Corporation v. Mills (Ethel)*, 531 Pa. 642, 611 A.2d 714 (1992), the plaintiff was injured while attending a concert at Penn's Landing, an urban recreational facility located along the Delaware River in Philadelphia. The court ruled that this sort of facility constituted improved land and was therefore not of the type contemplated by the RULWA and that liability was not barred. However, the concurring opinion by Judge Pellegrini indicated that the actual site of the injury was an undeveloped grass strip between the sidewalk and the street. The concurrence stated:

> However, I disagree that an urban mixed use facility such as Penn's Landing can never be covered by RULWA. Those portions of Penn's Landing that are devoted to public recreation and require no maintenance as defined in *Walsh* [*Walsh II*], e.g., large grassy areas are within RULWA ambit just as if they were in a rural area. The purpose of the Act is to make private land open for recreational use no matter where located.

*Mills*, 145 Pa.Cmwlth. at 562, 604 A.2d at 757. Judge Pellegrini chose to concur because the grass strip between the sidewalk and street was not used for recreational purposes. We agree with the concurrence as to the apparent impact of

*Walsh II;* urban or residential mixed use land is not outside of the ambit of the RULWA per se. Thus, we find that the RULWA bars liability instantly.

We find appellants' second argument, whether allegedly willful and malicious conduct on the part of appellee Y.M.C.A. falls under one of the exceptions to the RULWA, 68 P.S. § 477–6(1), easier to refute. When appellee Y.M.C.A. was put on notice that some of the trees on its property were in a state of dangerous decay, appellee Y.W.C.A. engaged a tree service to cut back and/or remove those trees which presented a danger. Appellants' claim that appellee Y.M.C.A. was willful or malicious in waiting four or five years from time of notice until hiring a tree service appears misplaced to us. Not only was the tree service engaged at least a month or two prior to appellant husband's accident, but according to appellants' brief,[4] it apparently had worked on the very tree which caused the injury. We would characterize this sort of behavior as prudent rather than willful or malicious.

Accordingly, the order of the trial court entered July 3, 1991, granting summary judgment as to appellee Y.M.C.A., is hereby affirmed. Jurisdiction relinquished.