## Cook v. Borough of Gettysburg

C.P. of Adams County, no. 96-S-626.

*Joseph Blum* and *Jeffrey Cook,* for plaintiffs.
*James Thomas* and *James Carl,* for defendants.

SPICER, *P.J.,* June 4, 1999—Plaintiff filed her complaint November 25, 1996, alleging, inter alia, that a fireworks display was presented on lands owned by the Borough of Gettysburg in conjunction with the annual Gettysburg Fire Department carnival. The area is known as Rec Park, and was visited the day afterwards, July 6, 1996, by plaintiff and her minor son, Robert. The child found and picked up debris that in-

cluded unexploded fireworks, and took it home. As Robert played with the material outside plaintiff's home, the fireworks exploded and blew off the child's hand.

In its preliminary objections, filed December 12, 1996, borough argued among other things that plaintiff's action was barred by the Recreation Use of Land and Water Act, 68 P.S. §477-1 et seq. In denying the objection, Judge John D. Kuhn observed:

"Our Supreme Court has held that the Act applies only to lands that are largely unimproved and where no admission fee is charged. *Lory v. City of Philadelphia,* 544 Pa. 38, 41, 674 A.2d 673, 674 (1996), *cert. denied,* 117 S.Ct. 184, 136 L.Ed.2d 123. (citations omitted)

"For purposes of a demurrer, there is no indication in plaintiffs' complaint that the real estate in question was largely unimproved. Therefore, it is not clear at this stage of the pleadings that the Recreation Use of Land and Water Act would be applicable." Slip opinion 10-28-97, p. 6.

Borough again raised the defense of immunity under RUA in its answer and new matter, filed March 20, 1998. Plaintiff replied, April 20, 1998, that borough's assertion was a conclusion of law and the case proceeded to a pretrial conference before Judge Kuhn. An eight-day jury trial was scheduled for the term beginning August 9, 1999. Borough has timely moved for summary judgment, again citing RUA. The motion was argued and heard by the undersigned, and is ready for disposition.

Rec Park is not definitively described in pleadings, but there appears to be no dispute that plaintiff has accurately described the area in her brief. On page 6 she asserts, based on a portion of a deposition attached

thereto, that the area is "a community park in Gettysburg a quarter of a block from plaintiff's home," and is improved with a football field, baseball field, swing set and track located thereon. Grass is regularly mowed.

Plaintiff argues that the fields were built and designed in a manner that enhanced the value and utility of the land and adapted it for a new purpose, is comparatively small in size and relatively easy to keep a safe condition.

Plaintiff further contends that the improvements themselves caused the accident because fireworks displays must be conducted in open fields. The point invites an esoteric discussion on cause-and-effect, which the court declines to accept. For reasons that will be discussed, it is unnecessary to determine whether a mowed field was the instrumentality of the injury. Rather, it is only necessary to decide whether the park's location, and its development for purposes of public access and enjoyment place it beyond the ambit of RUA.

The Act provides:

*"Section 477-1. Purpose; liability*

"The purpose of this Act is to encourage owners of land to make land and water area available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

*"Section 477-2. Definitions*

"As used in this Act:

"(1) *'Land'* means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

"(2) *'Owner'* means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

"(3) *'Recreational purpose'* includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archeological, scenic, or scientific sites.

"(4) *'Charge'* means the admission price or fee asked for in return for invitation or permission to enter or go upon the land.

"*Section 477-3. Duty to keep premises safe; warning*

"Except as specifically recognized or provided in section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

"*Section 477-4. Assurances of safe premises; duty of care; responsibility, liability*

"Except as specifically recognized by or provided in section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

"(1) Extend any assurance that the premises are safe for any purpose

"(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons."

Sections 5 and 6 of the Act have no applicability to the present action. Section 5 applies to land leased to the state or subdivision thereof, and section 6 preserves liability in cases where there is either a charge of admission or willful or malicious failure to warn or guard against a dangerous condition, use, structure or activity.

Summary judgment is appropriately entered where it is clear that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Mills v. Commonwealth,* 534 Pa. 519, 633 A.2d 1115 (1993).

One might conclude, as borough has argued, that statutory language insulates an owner of an open field from liability when anyone walks[1] across without having to pay a fee. Nothing in the Act's language precludes such an interpretation or application. However, things are rarely as simple as they might seem. This type of legislation has provoked considerable debate and widely divergent results by courts. The Superior Court considered various results and policy arguments in *Redinger v. Clapper's Tree Service Inc.,* 419 Pa. Super. 487, 615 A.2d 743 (1992), *alloc. denied,* 533 Pa. 652, 624 A.2d 111 (1993). That court observed that, as of 1998, 48 states had enacted some form of law limiting

---

1. Perhaps we should say "hike," since there are indications that ingress and egress may not qualify for recreational purposes. See *Mills v. Commonwealth, supra.*

the liability of landowners to those they allowed to come upon their property for recreational purposes, and around 20 states had adopted essentially the same model Act. Even when interpreting identical language, jurists have rendered conflicting decisions. Playground bleachers have been treated differently than football stadium bleachers; at least one state protects backyards while other states exclude urban property.

The Superior Court's opinion contained an interesting quote from a law review article by Sandra M. Renwand, "Beyond *Commonwealth[, Department of Environmental Resources] v. Auresto:*[2] Which Property Is Protected by the Recreation Use of Land & Water Act?", 49 U.Pitts.L.R. 261, 1987, pp. 277-80:

"It is more reasonable for the recreational user to expect that land located in urban (populated) areas will be maintained, and therefore such land should not be protected by the RUA. . . . The more improved the property, the more reasonable it is for the user to expect that the landowner has maintained it in a safe condition." 419 Pa. Super. at 497, 615 A.2d at 748. (footnotes omitted)

Impliedly rejecting this policy, the Superior Court affirmed the grant of summary judgment in favor of a landowner when a falling tree limb injured a spectator at a baseball game. Since the limb was part of the land's natural state, the court held that RUA applied. Nonetheless, the court conceded that "[t]his holding

2. 511 Pa. 73, 511 A.2d 815 (1986). That case involved a snowmobiler injured by a snow-covered tree stump in a state forest. Our Supreme Court held that RUA was available to the Commonwealth as well to private landowners.

puts us in seeming conflict with a recent decision of the Commonwealth Court. In *Mills v. Commonwealth of Pennsylvania and Penn's Landing Corporation,* 145 Pa. Commw. 558, 604 A.2d 755 (1992), *allocatur granted, Penn's Landing Corporation v. Mills (Ethel)* 531 Pa. 642, 611 A.2d 714 (1992), the plaintiff was injured while attending a concert at Penn's Landing, an urban recreational facility located along the Delaware River in Philadelphia. The court ruled that this sort of facility constituted improved land and was therefore not of the type contemplated by RULWA and that liability was not barred." 419 Pa. Super. at 501, 615 A.2d at 750. Superior Court adopted the reasoning expressed in the concurring opinion by Judge Pellegrini, who opined that large urban grassy areas were just as much within RUA as rural areas. Judge Pellegrini concurred in the Commonwealth Court's denial of summary judgment because the accident occurred within a grassy strip between a sidewalk and street and was not used for recreational purposes.

The Supreme Court gave no indication that it supported Judge Pellegrini's view in affirming the Commonwealth Court. To the contrary, our highest court said:

"We find that the factors relied upon by *Penn's Landing,* that the area is used for recreational purposes by the general public and that no admission fee is required to enter Penn's Landing, are not dispositive in applying the immunity protections afforded under the RUA. Rather, we believe the intended beneficiaries of the RUA, in addition to the general public, are landowners of large unimproved tracts of land which, without al-

teration, is amenable to the enumerated recreational purposes within the Act. The purpose of the RUA was to provide immunity to landowners as an incentive to them in exchange for their tolerance of public access to their lands for recreational pursuits. The RUA was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public." *Mills v. Commonwealth,* 534 Pa. at 526, 633 A.2d at 1119.

In this judge's opinion, language by our highest court clearly indicates adoption of the above quoted policy statement in Professor Renwand's law review article, and amounts to a rejection of the approach taken in *Redinger, supra.* A more recent Superior Court decision supports our conclusion. In *York Haven Power Co. v. Stone,* 715 A.2d 1164 (Pa. Super. 1998), the court ruled that RUA applied only to natural ponds and was not available to a defendant who dammed up the Susquehanna River and created a large, artificial lake. Even Judge Olszewski, who expressed concerns about the majority ruling that RUA did not apply as a matter of law, quoted the Supreme Court that RUA was "designed to encourage the opening up of large private land holdings for outdoor recreational use. *Rivera [v. Philadelphia Theological Seminary],* 510 Pa. [1] at 16, 507 A.2d [1] at 8." Quoted at 715 A.2d 1167.

Based upon this court's reading of appellate authority, we are constrained to hold that RUA immunity is unavailable to the borough.

## ORDER

And now, June 4, 1999, the motion for summary judgment filed by the Borough of Gettysburg is denied.