**Susan PAGNOTTI, Administratrix of the Estate of Thomas Pagnotti, Jason Humphrey, a minor by and through his mother, Gela Fabrizio and Gela Fabrizio, on her own behalf, Appellants,**

v.

## LANCASTER TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued April 10, 2000.
Decided May 16, 2000.

Kenneth L. Mirsky, Philadelphia, for appellants.

Charles J. Daly, Philadelphia, for appellee.

Before FRIEDMAN, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Susan Pagnotti, Administratrix of the Estate of Thomas Pagnotti, Jason Humphrey, a minor by and through his mother, Gela Fabrizio, and Gela Fabrizio, on her own behalf, (collectively, Appellants) appeal from a June 4, 1997 order of the Court of Common Pleas of Lancaster County (trial court) and from an April 13, 1999 trial court order. In the June 4, 1997 order, the trial court dismissed Count IV of Appellants' complaint alleging negligent infliction of emotional distress. In the April 13, 1999 order, the trial court denied Appellants' motion for summary judgment against Lancaster Township (Township) and granted the Township's cross-motion for summary judgment based on the Township's immunity from liability under what is commonly referred to as the Recreation Use of Land and Water Act (RUA).[1]

On June 10, 1996, Thomas Pagnotti, aged twelve, and his friend, Jason Humphrey, then aged thirteen, went swimming in Little Conestoga Creek. The creek is located in Maple Grove Park, a 7.7–acre property purchased by the Township in 1992 for use as a community park.[2] Thomas drowned when he slipped from, or swam over, a low head dam situated on the creek, and Jason was injured when he tried to help Thomas.

Before being purchased by the Township, the property was privately owned and previously had been used as a pool

1. Act of February 2, 1966, P.L. (1965) 1860, as amended, 68 P.S. §§ 477–1 – 477–8.

2. The Maple Grove Park property originally was part of a larger parcel. The portion immediately east of Maple Grove Park was not part of the Township's purchase; it was developed privately as a shopping center. (R.R. at 71a.)

club. At the time of purchase, the property had on it an old dilapidated pool, a dilapidated one-story pool house and an old mill. The Township's immediate objective was to clean up the property and make it into a nice green area that people could use for recreational purposes. To this end, the Township excavated and filled in the pool, regraded the area and added topsoil and grass. (Deposition of Mark Paul Lauriello,[3] R.R. at 74a–75a.) Subsequently, the Township renovated the pool house and converted it into a community building. (R.R. at 73a, 77a). The Township then constructed an open-air pavilion and installed a pedestrian/bike path adjacent to the property, connecting the property to a nearby cul-de-sac. (R.R. at 74a, 77a, 80a.) The community building and pavilion, along with the old mill which still remains, are the only buildings on the property, the grounds of which are open to the public without charge.[4] (R.R. at 73a, 76a.) As to the low head dam, although owned by the Township as part of Maple Grove Park, the dam actually is located in a part of Maple Grove Park which extends into neighboring East Hempfield Township. (R.R. at 57a.) Because the Township did not survey the property when it purchased Maple Grove Park, the Township was unaware that the dam was part of the purchase. In fact, the Township only learned of the dam's existence after Thomas Pagnotti's 1996 accident. (R.R. at 56a, 58a, 78a–79a.) The low head dam has since been demolished.

3. Lauriello, the Township's engineer, testified as to the condition of Maple Grove Park at the time the Township purchased it and in the years following.

4. Although there is no charge for access to Maple Grove Park, the community building is rented out to community groups and private individuals. (R.R. at 76a.)

5. In Counts I and II, Susan Pagnotti, as administratrix of Thomas Pagnotti's estate, brought a survival action and a wrongful death action respectively. Count III alleged a claim in negligence seeking damages for physical and psychological injuries to Jason

Appellants brought a civil action against the Township seeking damages for personal injury arising out of the June 10, 1996 incident, alleging, *inter alia*, that Thomas' death and Jason's injuries were the direct and proximate result of the Township's negligence in maintaining the inherently dangerous low head dam. (R.R. at 11a–16a.) The Township filed preliminary objections seeking to dismiss Count IV of Appellants' complaint which alleged a claim for negligent infliction of emotional distress on behalf of Jason Humphrey.[5] (R.R. at 19a–21a.) The trial court sustained the preliminary objections and dismissed this claim in its June 4, 1997 order. (R.R. at 31a–32a.)

Appellants subsequently filed a motion for summary judgment seeking judgment under the attractive nuisance doctrine. The Township then filed a cross-motion for summary judgment seeking judgment based on a claim of immunity from liability under the RUA and under what is commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. The trial court determined that Appellants provided no evidence to establish that Maple Grove Park is improved land outside the purview of the RUA; rather, the trial court found, as a matter of law, that Maple Grove Park is a largely unimproved tract of land within the RUA's protection. Thus, in its April 13, 1999 order, the trial court denied Appellants' summary judgment motion and granted the Township's cross-motion for

Humphrey, and Count V was a claim brought by Gela Fabrizio to recover medical expenses incurred for Jason's treatment. (R.R. at 14a–16a.) In Counts III, IV and V, Appellants also sought punitive damages; however, Appellants did not oppose the Township's request, made in its preliminary objections, to dismiss Appellants' claim for punitive damages. (R.R. at 27a, 29a.) When Appellants filed their complaint, on November 12, 1996, they named several other parties as defendants in addition to the Township. However, under subsequent stipulations, all parties other than the Township were dismissed from the action. (R.R. at 33a–42a.)

summary judgment. Appellants now appeal from both the June 4, 1997 order and the April 13, 1999 order.

Initially, Appellants argue that the trial court erred in granting the Township's motion for summary judgment[6] based on the determination that the Township was immune from liability under the RUA. Appellants claim that, contrary to the trial court's determination, Maple Grove Park is substantially improved land to which the RUA does not apply. In response, the Township maintains that the trial court's decision was proper because Maple Grove Park is largely unimproved land open to the public without charge for recreational purposes and, as such, comes under the RUA's immunity provisions. Thus, the parties' main point of contention before the trial court was whether Maple Grove Park is the type of "land" intended to benefit from the protections offered by the RUA. In order to resolve this question, it is necessary to consider the relevant statutory provisions and their application by the courts.

The intent of the RUA "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."[7] Section 1 of the RUA, 68 P.S. § 477–1. To that end, sections 3 and 4 of the RUA provide:

> Except as specifically recognized or provided in section 6 of this act,[8] an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Except as specifically recognized by or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> (1) Extend any assurance that the premises are safe for any purpose.
>
> (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

6. Our scope of review of a trial court order granting summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Jones v. Cheltenham Township*, 117 Pa. Cmwlth. 440, 543 A.2d 1258 (1988). For courts to enter summary judgment, the pleadings, depositions, answers to interrogatories, and admissions together with affidavits, if any, must demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. Nos. 1035.1 and 1035.2; *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). In deciding a motion for summary judgment, we must review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied*, 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). However, to defeat a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his or her case and on which he or she bears the burden of proof such that a jury could return a verdict in his or her favor. *Id.*

7. Although the RUA originally was designed to protect private landowners, our supreme court has held that the RUA insulates both private and public landowners from liability for injuries to persons using lands for recreational purposes. *Department of Environmental Resources v. Auresto*, 511 Pa. 73, 511 A.2d 815 (1986); *see also Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673 (1996), *cert. denied*, 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996); *Farley v. Township of Upper Darby*, 100 Pa.Cmwlth. 535, 514 A.2d 1023 (1986), *appeal denied*, 517 Pa. 611, 536 A.2d 1334 (1987).

8. Section 6 of the RUA, 68 P.S. § 477–6, provides an exception to the grant of immunity, stating that the RUA does not limit liability which otherwise exists: (1) for willful or malicious failure to guard against a dangerous condition, use, structure or activity; or (2) for injury suffered in any case where the owner of land charges admission to use the land for recreational purposes. Although discussed by the trial court, there is no claim that section 6 of the RUA applies here.

(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

68 P.S. §§ 477–3, 477–4. Section 2(1) of the RUA defines "land" as:

land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

68 P.S. § 477–2(1) Further, the RUA defines "recreational purposes" as including, but not limited to, any of the following, or any combination of the following:

hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archeological, scenic, or scientific sites.

68 P.S. § 477–2(3).

Our supreme court has addressed the scope of the RUA's immunity provisions on several occasions, beginning with *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 507 A.2d 1 (1986). *Rivera* involved the accidental drowning of a boy at an urban, indoor swimming pool owned by the defendant seminary. In holding that the RUA did not bar the seminary's liability, the court explained that, as evident from the RUA's stated purpose and from the nature of activities listed as "recreational purposes," the legislature clearly intended to limit applicability of the RUA to outdoor recreation on largely unimproved land. Consequently, the court concluded that, despite the inclusion of buildings and structures within the RUA's definition of "land," the meaning of these words was confined to "ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions." *Id.* at 15, 507 A.2d at 8.

Our supreme court next considered application of the RUA in *Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445 (1991). In *Walsh*, the court refused to extend the RUA's protections to immunize the City of Philadelphia from liability for injuries to a basketball player injured when he fell into a hole in the blacktop of a paved inner-city playground and recreation center. The court determined that the playground was excluded from the immunity provisions of the RUA because it was a completely improved recreational facility,[9] and the plaintiff was injured because of the condition of the improvements. The court reasoned that, notwithstanding the purpose of the RUA to encourage landowners to allow free access to their property for outdoor recreational purposes, extension of the RUA's provisions to such a facility would disregard the reasonable expectations of the users of such a facility. Specifically, the court stated:

When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability.

*Id.* at 238, 585 A.2d at 450.

Subsequently, in *Mills v. Commonwealth*, 534 Pa. 519, 633 A.2d 1115 (1993), our supreme court considered the applicability of the RUA to Penn's Landing, a 37–acre tract of land on an inner-city waterfront, redeveloped through the addition of hotels, restaurants, a museum, historic ships, a marina and a stage with an amphitheater. Although the plaintiffs in *Mills* were injured on unimproved portions of the property, the court considered the land

---

9. Although outdoors and open to the public for recreation, the center was a cement, inner-city facility with two full basketball courts, boccie courts and benches, all within an area that was one block long and half a block wide.

as a whole, and, based on the fact that the property had been highly developed and vastly altered from its natural state, the court stated:

> [W]e believe the intended beneficiaries of the RUA, in addition to the general public, are landowners of large unimproved tracts of land which, without alteration, is amenable to the enumerated recreational purposes within the [RUA].... The RUA was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public.

*Id.* at 526, 633 A.2d at 1118–19.

Most recently, in *Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673 (1996), *cert. denied*, 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996), the supreme court held that the RUA immunized the City of Philadelphia from liability based on negligence for the death of a teenage boy who drowned when he consumed alcohol and then swam in a natural pond in a remote and undeveloped portion of a city park. The court did not comment on the fact that the park was in the middle of a large urban area or discuss whether any improvements had been made to any other parts of the park; instead, the court merely noted that, because the RUA applies to lands that are largely unimproved in character and where no admission fee is charged, the city's only liability to users of its undeveloped parkland was under section 6 of the RUA, for willful or malicious failure to warn against dangers.

Relying on *Mills* and *Walsh*, Appellants argue that, whether this court considers Maple Grove Park in its entirety or looks only at the low head dam, the Township is not protected under the immunity provisions of the RUA.

First, Appellants contend that we may decide this case by applying the reasoning in *Mills* to deny application of the RUA to the substantially altered Maple Grove Park area. Appellants contend that it is evident from the record here that Maple Grove Park was not a largely unimproved piece of land opened to the public for recreational purposes; rather, they contend that, like the waterfront area in *Mills*, Maple Grove Park was specifically developed by the Township with substantial improvements so that it might be made available for recreation.[10] Alternatively, Appellants suggest that we adopt the rationale of *Walsh* to hold that, because the low head dam is an improvement that must be maintained, it is not covered by the RUA. Appellants also point to other factors as weighing against the application of the RUA here, specifically, that a fee was required for rental of the community building and the fact that Maple Grove Park was not in a remote or rural location.

**10.** In this regard, Appellants also assert that this case is quite similar to *York Haven Power Co. v. Stone*, 715 A.2d 1164 (Pa.Super.1998), *vacated and remanded*, —— Pa. ——, 749 A.2d 452 (2000). In *York Haven*, two men were killed while boating on a lake formed by the damming of the Susquehanna River and used for boating and other water-related sports. The superior court concluded that the damming of the Susquehanna River, and consequent creation of a lake, represented an improvement to, and substantial physical change from, the river's natural state, so that application of the RUA's immunity provision was improper. Appellants assert that, as in *York Haven*, a dam had been built on the Township's property, the construction of which significantly changed the flow of water in the creek running through Maple Grove Park at the dam site. However, there is no comparison between the change of water flow caused by the low head dam in Little Conestoga Creek and the creation of a lake due to the damming of the Susquehanna River in *York Haven*. Indeed, the Township removed the low head dam after determining that the dam had no real effect on water flow. Moreover, our supreme court granted allocatur in *York Haven* and, after considering the question of whether the RUA's immunity provisions extended to the lake in that case, held that the lake is subject to the immunity provided by the RUA.

However, Appellants' reliance on *Mills* or *Walsh* to support its position is strained at best. In *Mills*, the City of Philadelphia completely transformed what had been an empty waterfront area into a highly developed waterfront attraction with hotels, restaurants and various other commercial enterprises which charged fees for their use and did not invite the types of recreational purposes listed in the RUA. Clearly, Maple Grove Park bears no resemblance to Penn's Landing. In *Walsh*, the city constructed a recreation facility on inner-city concrete and then allowed it to deteriorate in such a manner that injury to its users was foreseeable.[11] Again, the facts here are far different. Unlike the situation in *Walsh*, the Township did not provide recreational opportunities by making improvements to Maple Grove Park and then allow them to deteriorate; in fact, in large part, the improvements made by the Township were intended to ameliorate the deteriorated condition of the property. Moreover, the Township could not have foreseen an injury resulting from the low head dam's disrepair because the Township did not construct it or even know of its existence until Thomas Pagnotti's accident.[12] Further, we note that Thomas Pagnotti might have drowned even if the dam were in perfect condition. In fact, low head dams normally present no hazard to swimmers and only become dangerous in conditions of high water flow, when a "roller" is created at the base of the dam creating an undertow that is difficult to escape. (R.R. at 43a–44a.) Tragically, on June 10, 1996, Thomas and Jason went swimming following a significant rain. (R.R. at 104a–05a, 115a.)

On the other hand, the Township contends that *Lory* dictates that the Township is immune from liability. The Township reasons that, like the park in *Lory*, Maple Grove Park, although not located in a rural area, is largely unimproved and charges no admission fee. The Township concedes that Maple Grove Park is not pristine wilderness, but notes that the RUA itself recognizes that the presence of buildings or structures on the land does not necessarily render the land improved for purposes of the RUA. 68 P.S. § 477-2(1). In fact, the Township points to several cases where, despite the presence of ancillary buildings and structures, this court applied the RUA to immunize municipal corporations from liability where the plaintiffs were injured while using local public parks for recreational purposes without a fee. According to the Township, Maple Grove Park does not differ from any of these cases, asserting that here too, Maple Grove Park's structures are clearly ancillary to its main purpose, i.e., outdoor recreation, and Thomas and Jason paid no fee to be on the property pursuing this purpose.

Specifically, the Township cites *Brezinski v. County of Allegheny*, 694 A.2d 388 (Pa.Cmwlth.1997) (concluding that the

---

**11.** In *Seiferth v. Downingtown Area School District*, 145 Pa.Cmwlth. 562, 604 A.2d 757 (1992), this court followed *Walsh* to determine that a lacrosse field was improved land, thereby depriving its owner of immunity from liability under the RUA when a member of the lacrosse team injured herself stepping into a large hole in the field during practice. In doing so, we noted that, like the basketball court in *Walsh*, the field was specifically constructed and engineered for a new purpose—as a venue for athletic competition—and, as such, required regular maintenance to ensure its suitability for that use.

**12.** We focus on the dam's state of repair to illustrate why *Walsh* is inapplicable here. We

recognize, as Appellants urge, that, in addition to proper maintenance, a landowner's duty may include warning others of known dangers. In *Walsh* and *Mills*, the party requesting immunity was the party that created the "improvements" on the land; however, here, the Township did not install the low head dam. We agree with the trial court that, although responsibility for maintaining "improvements" should not be limited *only* to those who install them, the fact that the Township did not construct the low head dam, or know that it existed, is a factor which can be considered in determining whether to grant the Township immunity under the RUA.

county was immune under the RUA when a picnicker at a county park sued for injuries sustained in a slip and fall while walking down a hillside from a picnic pavilion to a parking lot); *Wilkinson v. Conoy Township*, 677 A.2d 876 (Pa.Cmwlth.1996) (concluding that, under the RUA, a township was not liable to a plaintiff who was injured when she fell into a hole caused by a removed tree trunk on the grounds of the township park); *Jones v. Cheltenham Township*, 117 Pa.Cmwlth. 440, 543 A.2d 1258 (1988) (concluding that a township was immune under the RUA in an action arising out of the death of a boy who fell into a fifteen-foot drop off in a township park creek and drowned); *Kniaz v. Benton Borough*, 112 Pa.Cmwlth. 416, 535 A.2d 308 (1988) (concluding that the borough was immune under the RUA in an action brought by a plaintiff injured when the bench on which she was seated overturned while she was attending a picnic in a pavilion in the borough's public park); and *Farley v. Township of Upper Darby*, 100 Pa.Cmwlth. 535, 514 A.2d 1023 (1986), *appeal denied*, 517 Pa. 611, 536 A.2d 1334 (1987) (concluding that the RUA immunized the township from suit by parents whose child was injured when he fell from a sliding board in the township park). We disagree that the cases relied on by the Township necessarily support its position.

Initially, we point out that *Brezinski* (unimproved hillside) and *Jones* (unaltered creek) can easily be distinguished from the present case because, unlike the situation here, the injuries to the plaintiffs in those cases were not attributable to any improvement on the property.[13] In fact, this same distinction can be made with regard to *Lory* (natural pond), relied on here by the Township. Further, in *Farley, Jones, Kniaz* and *Wilkinson*, the question of improvements to the land was not at issue in determining immunity under the RUA, and, therefore, these cases offer no help to the Township.

█ As is so often the case when dealing with the RUA, none of the decisions relied on by the parties controls the particular situation. However, from a review of the cases dealing with the RUA, we identify the following factors that the courts have considered in determining whether the RUA was intended to apply to insulate a particular landowner from tort liability: (1) the nature of the area in question, that is, whether it is urban or rural, indoor or outdoor, large or small; (2) the type of recreation offered in the area, that is, whether persons enter to participate in one of the recreational purposes listed in section 2(3) of the RUA; (3) the extent of the area's development, that is, whether the site is completely developed and/or significantly altered from its natural state; and (4) the character of the area's development, that is, whether the area has been adapted for a new recreational purpose or, instead, would be amenable to the enumerated recreational purposes of the RUA even without alteration.[14] We also deem it

13. *See also Redinger v. Clapper's Tree Service, Inc.*, 419 Pa.Super. 487, 615 A.2d 743 (1992), *appeal denied*, 533 Pa. 652, 624 A.2d 111 (1993) (holding that, under the RUA, a property owner was not responsible for injury to a spectator in the bleachers at a community baseball field because the injury was due to a falling, decayed tree limb rather than from any improvement to the baseball field).

14. Recently, the superior court utilized a similar multi-factor approach in *Yanno v. Consolidated Rail Corporation*, 744 A.2d 279 (Pa.Super.1999). In *Yanno*, the court determined that the RUA immunized the defendant railroad from suit for injuries suffered by a pedestrian when he fell from a railroad trestle on railroad property that was no longer used for business purposes. In doing so, the court recognized that an improvement on the property does not, on its own, automatically remove the property from the protection of the RUA, even where the plaintiff is injured as a result of that improvement. Thus, declining to focus solely on whether there was an improvement to the land, the court set forth five factors to be considered when deciding whether a landowner receives immunity under the RUA: (1) use (property opened exclusively for recreational use is more likely to receive protection under the RUA than property also used for business purposes); (2) size (the larger the property, the more likely that it receives protection under the RUA); (3) loca-

appropriate to consider any unique facts as additional factors where doing so would advance the purpose of the RUA.

■ Applying these factors to the situation here, and considering the property as a whole,[15] we conclude that, on balance, the Township is entitled to the immunity provisions of the RUA. First, although the area is not rural or even semi-rural, in terms of size and openness, it cannot be compared to an indoor swimming pool, *see Rivera* or to an outdoor inner-city recreation center, *see Walsh.* Second, Maple Grove Park is open for many, albeit not all, of the recreational purposes listed in the RUA, and it has no secondary commercial purpose, *compare Mills.* Third, the property's development has not been all inclusive where the majority of its 7.7 acres consists of grass and trees, *but see Bashioum v. County of Westmoreland,* 747 A.2d 441 (Pa.Cmwlth.2000). Fourth, although the use of the property was changed from a private pool club to a community park, that transformation did not require extensive development or significant alteration, *compare Mills; Walsh; York.* Finally, al-

though one could argue that the Township should have known of the low head dam's existence and taken proper precautions against the dangers it posed, the fact remains that the Township did not erect the dam as one of Maple Grove Park's improvements, *compare Walsh; Brown v. Tunkhannock Township,* 665 A.2d 1318 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 636, 675 A.2d 1252 (1996); *Seiferth v. Downingtown Area School District,* 145 Pa.Cmwlth. 562, 604 A.2d 757 (1992). Thus, under this analysis, we conclude that the trial court did not commit an error of law or abuse its discretion by determining that the RUA provides the Township with tort immunity for any injury sustained by Thomas Pagnotti or Jason Humphrey.

Accordingly, we affirm the trial court's April 13, 1999 order granting summary judgment in favor of the Township.[16]

## ORDER

AND NOW, this 16th day of May, 2000, the order of the Court of Common Pleas of Lancaster County (trial court), dated April

---

tion (the more remote and rural the property, the more likely that it will receive protection under the RUA); (4) openness (open property is more likely to receive protection than property that is enclosed); and (5) extent of improvement (the more highly-developed the property, the less likely it is to receive RUA protection).

15. In *Yanno,* the superior court also concluded that whether the application of the multifactor test involves the entire piece of property or only the section upon which the plaintiff sustained the injury should be determined on a case by case basis, using the intended purpose of the RUA to guide the determination. We agree that this is a sensible approach to take in resolving cases of this sort and, for this reason, despite outward appearances, *Yanno* does not conflict with this court's recent decision in *Bashioum v. County of Westmoreland,* 747 A.2d 441 (Pa.Cmwlth.2000), in which we held that, given the rationale underlying the RUA, the court of common pleas erred in focusing on the entirety of a largely unimproved county park, rather than on a giant slide in the park on which the plaintiff was injured, to conclude that the slide came within the RUA's immunity provisions. We reasoned that the county erected the sophisti-

cated 96–foot long giant slide knowing that it required intensive safety inspections and above normal maintenance and, thus, this improvement did not fall within the meaning of ancillary structure, as contemplated in *Rivera.*

16. Appellants also appeal from the trial court's June 4, 1997 order granting the Township's preliminary objections to Count IV of their complaint, which stated Jason Humphrey's claim for negligent infliction of emotional distress. Our disposition here renders that issue moot, and, thus, we will dismiss Appellants' appeal from the trial court's earlier order. However, we note that to make out a claim for negligent infliction of emotional distress, there must be a close relationship between the plaintiff and the victim in order that the infliction of distress be foreseeable. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). The superior court has interpreted *Sinn* as creating a foreseeability limitation, with the *familial* relationship defining the spectrum of permissible claims. *Covello v. Weis Markets, Inc.,* 415 Pa.Super. 610, 610 A.2d 50 (1992), *appeal denied,* 533 Pa. 644, 622 A.2d 1376 (1993).

13, 1999, is hereby affirmed. The appeal from the trial court order, dated June 4, 1997, is hereby dismissed as moot.